## GEORGIA RAILROAD AND BANKING COMPANY *v.*
## CROMER, administrator, and *vice versa.*

Where a railroad-crossing is in a populous locality and is much used by the public, but the same is not within the limits of an incorporated city or town and is not a part of a public road established pursuant to law, what rate of speed in approaching and running over such crossing would be negligence, and what signals ordinary care would require to be given, are matters to be determined by a jury according to the circumstances of each particular case.

Submitted October 18, — Decided November 19, 1898.

Action for damages. Before Judge Callaway. Greene superior court. February term, 1898.

*Joseph B. & Bryan Cumming* and *J. B. Park Jr.,* for the railroad company. *Samuel H. Sibley,* contra.

COBB, J. Emma Parrott sued the Georgia Railroad & Banking Company for damages sustained by her, growing out of the homicide of her husband by the defendant company. She died pending the suit, and her administrator was made a party. The petition alleged, that the deceased was driving a team of mules and a wagon upon the public road in the village of Union Point, from the vicinity of the stores on the south side of the railroad-crossing to the north side thereof, the crossing being a regular public crossing 100 yards east of the depot of the defendant. As deceased approached the crossing the railroad eastward was hidden from his sight for a distance of half a mile by two cottonseed-warehouses erected on the right of way with the knowledge and consent of the company, and by bushes left growing on the right of way, and by a freight-car left standing near the crossing and the seed-houses. No train was due from the east at the time that deceased started to cross the track, and his attention was fixed upon another train of defendant, which was shifting near the crossing and to the westward of it. Just as the deceased got upon the crossing a train approached from the east, thirty minutes behind its schedule time, running at the rate of thirty miles an hour. There is no blow-post erected at said crossing, and in approaching the same no signals were given and the speed of the train was not

slackened.   The collision between the engine of the train and the wagon upon which deceased was riding occurred upon the crossing.   It is alleged that "said homicide of her husband was due to the gross negligence of said company in permitting said bushes and houses and freight-car to thus obstruct the approach to said crossing, in not having a signal-post therefor, in running said train at said high rate of speed in the limits of a town and across a public crossing, and in making no sound or signal, in approaching thereto, to warn travelers upon the highway."   Upon the trial it appeared that Union Point was an unincorporated village having about one thousand inhabitants; that the residence portion of the village was on one side of the railroad, and the business houses on the other; and that the crossing in question, which goes from the north to the south side of the town, is the only crossing immediately within the settlement, and is the one which is used by the inhabitants of the village in passing from one side of the town to the other; that deceased, at the time that he was killed, was going from the south to the north side of the town; that to the east of the crossing and on the south side of the track were two cottonseed-houses about twelve by twenty feet each, and that a freight-car was between the crossing and the seed-houses.  The car was on a side-track between the seed-houses and the main line.   The seed-houses are from forty to fifty yards from the crossing.   The main line is straight for a half-mile to the east.   The seed-houses and some bushes not taller than a wagon would obstruct a person's view in approaching the crossing.   The wagon-road which crosses the railroad is not a public road established pursuant to law.   When deceased was seen approaching the crossing his attention seemed to be diverted to a train which was shifting on the west of the crossing.   The evidence was conflicting as to whether any signal was given, either by whistle or by bell.   There was evidence tending to establish that certain persons, section-hands and others, who were in a position to see the approaching train, signaled the deceased by shout, to call his attention to the train, but he did not seem to hear, or, if he did, did not heed the warning, his attention being, as stated, drawn to the shifting train on the west of the crossing.   The

engineer testified that he was runing about fifteen miles an hour when he struck the wagon, and that he gave the station signal before reaching the crossing, and began to slacken his train; that before he commenced to slacken he was running about forty-five miles an hour, and thinks that he had reduced his speed to about fifteen miles an hour. From the testimony of the engineer and other employees upon the train, it appears that after the deceased was seen upon the track in a position of peril, all that diligence required was done to stop the train. The jury returned a verdict for the plaintiff for six hundred dollars. A motion for a new trial made by the defendant was overruled, and it excepted. No error of law is complained of, and the motion is based solely upon the grounds that the verdict was contrary to evidence and without evidence to support it.

The collision not having occurred at a public road crossing, the defendant was under no statutory duty to give a signal or check the train in approaching thereto. Civil Code, § 2222; *Comer* v. *Shaw*, 98 *Ga.* 543. Within the limits of incorporated cities and towns, and outside of such limits wherever a line of railroad crosses a road which has been established pursuant to law, a railroad company, in the operation of its trains, is bound to give such signals and perform such acts as are required by statute in the latter case, and those which may be required by such reasonable regulations as the municipal authorities may prescribe in the former. A failure in either case to comply with the requirements of the law applicable would amount to negligence in law. In the case of *Comer* v. *Shaw*, cited supra, Chief Justice Simmons uses this language: "Where a railroad-crossing is in a populous locality and is much used by the public, even though the provisions of [Civil Code, § 2222] are not applicable, greater care is required of railroad companies with respect to speed and signals than is to be expected at places where the railroad is crossed by unfrequented country roads not established by law as public roads; but non-compliance at such a place with the statutory requirements applicable to public roads established by law is not, as a matter of law, negligence per se. It is generally for the jury to say whether under such circumstances the railroad company was negligent or not.

. . This distinction is also to be taken into consideration when we come to consider the conduct of persons attempting to cross the railroad at such places. Where the crossing is one to which the statutory requirements above referred to are applicable, a person about to cross has a right to expect that the railroad company, in the running of its trains, will comply with these requirements; and reliance upon the discharge of its duties in the premises may in some degree excuse a want of full diligence on his part in looking out for the approach of a train. Where, however, the statute is not applicable, a person about to cross must assume a greater burden of care than he would be required to assume if the crossing were one to which the statute applied." In the case of Thomas v. Railroad Co., 19 Blatch. 533, Wallace, J., says: "Railroad corporations may ordinarily maintain such rate of speed with their trains as they see fit. They may even permit their officers to enjoy the luxury of special trains and dash over their roads with a single car almost noiselessly and at lightning speed. They may use their side-tracks near the intersection of highways or private roads for the storing of empty cars. While these things may not be agreeable to the general public, they are, nevertheless, within the privileges with which railroad corporations have been invested; and the public have no right to complain, because they are legitimately within these privileges. But, when these privileges come in collision with the rights of those who use the highways or private roads to cross the railroad, they must give way, because, as to these persons, the railroad corporation is under the obligation of exercising reasonable care to prevent injury. What is reasonable care, or, conversely, what omission of precaution is negligence, can only be defined by general propositions, the application of which must depend upon the circumstances of the particular case." Applying these principles to the case under consideration, it was for the jury to determine whether, under all the circumstances, it was the duty of the railroad company to give a signal of the train approaching this crossing, and to slacken the speed of the same; and if in this respect there was a failure of duty on the defendant's part, then whether the deceased, by the exercise of ordinary care, could

have avoided the consequences of its negligence in not giving the signal and reducing the speed of the train. It appearing: from the record that two juries have decided these issues in. favor of the plaintiff, and there being no complaint whatever of the manner in which the case was tried, or in which the judge submitted it to the jury, we will not interfere with his discretion in refusing a new trial.

Judgment affirmed. Cross-bill dismissed. All the Justices concurring, except Lumpkin, P. J., absent, and Lewis, J., disqualified.