## CRAWFORD v. SOUTHERN RAILWAY COMPANY.

1. Where in an action by a father against a railway company for the killing of his minor child, the petition alleges that the child was struck and killed by a locomotive drawing a train running "at a high and negligent rate of speed, to wit, at the rate of from twenty-five to thirty miles per hour," "within the limits of an incorporated and populous city"; that this rate of speed "was grossly negligent and showed a reckless disregard of human life"; that "by the observance of proper attention and ordinary care on the part of [the] engineer," the child "could have been seen by him for over 100 yards before reaching the point at which [she] was struck"; and that the engineer "was not in the discharge of his duty and not keeping a lookout on the track ahead of him as the engine rushed to the point where" the child was killed: *Held*, that the petition shows a case for submission to a jury, in order that they may determine, in the light of all the evidence introduced, whether the running of the train at the place in question at the speed designated was or was not negligent; whether or not the engineer was under the duty of looking out for the deceased, and, if so, whether or not he failed to observe such duty.

2. A child only four and a half years old is incapable of being guilty of contributory negligence.

3. The question whether a particular child of such age was capable of rendering any valuable service to its father should be left to a jury to determine in the light of the evidence submitted upon this point.

Argued October 17, 1898. — Decided April 19, 1899.

Action for damages. Before Judge Beck. City court of Griffin. March term, 1898.

It appears from the declaration, that on May 26, 1897, the plaintiff's daughter, four and a half years of age, was gathering berries with another child in a cut through which the defendant's line of railroad runs, within the corporate limits of Griffin. A passenger-train approached, running at a speed of twenty-five to thirty miles per hour. Plaintiff's child in alarm and agitation ran upon the railroad-track, and was struck by the engine of the train and killed, at a point 200 yards south of where a street of the city crossed the railroad. It was alleged, that this rate of speed within the city limits was grossly negligent, showing a reckless disregard of human life; that no signal by bell or whistle was given; that the engineer was not keeping a lookout on the track ahead of him, but had allowed his attention to be diverted toward persons or things to the side

of the track; that by the observance of proper attention and ordinary care on his part the two children could have been seen by him for over 100 yards before reaching the point where the child was struck, and the train stopped or its speed so reduced as to have prevented her being killed; that plaintiff was not lacking in ordinary care; that the child could not have avoided being struck, by the exercise of the care with which she was chargeable; that she was capable of rendering and did render to plaintiff specified services of stated value; and that he sues for the loss thereof, and for the expenses of medical attendance and burial. There was a demurrer which the court sustained. The grounds of the same are apparent from the opinion.

*Hoke Smith & H. C. Peeples* and *R. T. Daniel*, for plaintiff.
*C. E. Battle* and *J. D. Boyd*, for defendant.

Fish, J. This case was dismissed upon demurrer in the court below, and the plaintiff excepted. The main contention of the demurrer may be stated as follows: Taking the allegations of the plaintiff's petition to be true, his child was a trespasser upon the right of way and track of the defendant, and therefore the engineer engaged in running the defendant's train which killed the child owed it no duty whatever until its presence in a position of peril was discovered by him. It is not alleged in the petition that the engineer saw the child upon or dangerously near the track in time to prevent the collision which resulted in her death. Therefore, relatively to this child, the engineer was neither negligent in running his train, at the locality where the accident occurred, at the rate of from twenty-five to thirty miles an hour, nor in allowing his attention, while so running the train, to be diverted from the track in front of the engine to persons or things in the neighborhood but to the side of the track. Is this contention sound? Granting that a child only four and a half years of age who happens to stray upon a railroad-track, without the consent of the railway company, is a trespasser in the full sense of the term as applied to adult persons who without license go upon the track, and that ordinarily an engineer in control of a running locomotive owes no duty whatever to a trespasser until he

discovers the latter's presence upon the track in front of the engine,—upon which questions we now express no opinion,— will such a rule, if established, apply to a railroad-track in every locality through which it passes and under all circumstances? We apprehend not. One in the conduct of his own lawful affairs may not wantonly or recklessly injure even a wrong-doer who, from mere carelessness or thoughtlessness, goes upon his premises. He must so conduct his affairs as not to needlessly inflict injury upon another. Section 2321 of the Civil Code provides that "A railroad company shall be liable for any damage done to persons, stock, or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment or service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." No exception is here made, in favor of the company, in a case where the injury inflicted by one of its trains is upon a trespasser. It is true that this court, in the case of *Holland* v. *Sparks*, 92 *Ga.* 753, decided that, "Where no duty of diligence appears relatively to the person injured, there can be no presumption of its breach, notwithstanding the broad language of this section of the code." It is also true that that decision was rendered in a case where a trespasser upon the right of way of the defendant railway company was killed by the sudden derailment of several cars forming a part of a rapidly moving freight-train; and, although it was insisted by the plaintiff "that the servants in charge of the defendant's train were running it at a high and dangerous rate of speed, and that this conduct on their part amounted to negligence," it was held that the railroad company owed the deceased no duty with respect to the speed at which its train approached the point at which he was killed. But the court said: "The deceased was at a place where those in charge of the train had no reason to expect any one, and therefore the company owed him no duty with respect to the speed at which its train approached that point."

In *Air-Line Railway Co.* v. *Gravitt*, 93 *Ga.* 369, it was held,

that "The duty to observe all ordinary and reasonable care and diligence" towards a person "who, without license from the company, is walking upon a railway-track on a trestle, though such trestle be situated between a blow-post and a public crossing," "arises when his presence becomes known to the engineer, and not before." In that case, as appears from an examination of its record, the person in question was killed, not in a town or city, but in the country, upon a railroad-trestle which was thirty feet high and over three hundred feet long. So, like the person killed in the *Holland* case, he was "at a place where those in charge of the train had no reason to expect any one," and therefore it was held that the railway company owed him no diligence until the engineer in charge of its train discovered his presence there. If, however, injury is inflicted upon a trespasser, and, in a suit against the railway company for damages sustained in consequence of such injury, it appears that, although the person injured was a trespasser, the company owed him some degree of diligence to prevent the injury, the presumption would be against the company, and it would be liable unless it showed that its agents exercised all ordinary and reasonable care and diligence. Under such circumstances, the fact that the person injured or killed was a trespasser would be material only as it might tend to illustrate what would be, relatively to him, the exercise of all ordinary and reasonable care and diligence. Admitting, for the sake of the argument, that the general rule is that a railroad company owes no duty to a trespasser who is upon or dangerously near its track in front of a moving train, until its servants have discovered his presence there, and therefore, so far as his safety is concerned, is not obliged to maintain a lookout in the direction in which the train is moving, we do not think that this could properly be held to be a uniform, fixed and invariable rule, applicable alike to all cases and under all circumstances. Conduct which might, under one set of circumstances, show that all ordinary and reasonable care and diligence had been observed, might, under a different set of circumstances, be insufficient to show an observance of such care and diligence. We think that such a rule could mean no more than this: tak-

ing the locality where the train is running and all the sur-
rounding circumstances, if those in control of the movement
of the train have no reason to apprehend that there may likely
be a human being on the track in front of the engine, they
are under no duty to one who may in fact be there, until they
have actually discovered that he is there.    But if, from the lo-
cality or surrounding circumstances, there is reason to appre-
hend that the track in front of the locomotive may not be clear
of human beings, then, it seems to us, it is the duty of the em-
ployees of the company to keep a lookout ahead of the train;
most assuredly so unless they are performing some duty which
prevents their looking out upon the track in the direction in
which the train is moving.    Suppose that a locomotive en-
gineer knows that, in a particular locality, people and es-
pecially children, without even an implied license of the rail-
road company, are likely to be upon the railroad-track, can he,
while his train is rushing at great velocity through this local-
ity, fail to look down the track in front of him, without being
guilty of negligence relatively to a child who may be injured
or killed by the locomotive?    Are people, children as well as
adults, likely, at least in daylight, to be very near or upon a
railway-track within the limits of a populous city, at points
where they have no right to go upon the right of way of the com-
pany?  If they are, is a man charged with the running and con-
trol of a railroad-train, which may in an instant become so ter-
rible and tremendous an instrument of destruction to people
in its pathway, under no duty, relatively to such people, when
his train is running through such a city, either to slacken its
speed or to look ahead of his engine?    These are questions
which we feel sure no court can, as mere matters of law, decide
in the negative.

Mr. Justice Lumpkin, in *Holland* v. *Sparks*, supra, well said:
"What will constitute the amount or kind of diligence which
will be required as 'ordinary and reasonable' must necessarily
vary under different circumstances.    It can not be measured
or ascertained by any fixed and inflexible standard, because
the words just quoted are themselves relative terms, and what,
under some conditions, would be ordinary and reasonable dili-

gence might, under other conditions, amount to even gross negligence. For instance, for most purposes, running a passenger-train through the country at the rate of twenty-five miles an hour would be safe, prudent and proper, while to run the same train at this rate over a crossing in a crowded city would amount to wantonness. The measure of diligence due, therefore, by a railroad company to any person is a relative one, and what is or is not due diligence must be arrived at in every case with reference to the surrounding circumstances and the relations which, for the time being, the company and the person in question occupied towards each other." In Shearman & Redfield on Negligence the rule is laid down that, "Where a road passes through a populous district, without being closely fenced in, or for any other reason persons are likely to be near the track, the speed of trains should obviously be diminished in proportion to the liability of meeting persons on the track." See 5th ed. § 460, and cases cited. Even in the absence of statutory or municipal regulation, a railroad company has no right to run its trains through a populous city, even in places where the general public have no right to be, at any rate of speed which it may see fit, but the rate of speed must be regulated by due regard for the safety of the public. Chicago R. Co. v. Dunleavy, 129 Ill. 132. In the case which we have under consideration, it is alleged that the train which struck and killed the plaintiff's child "was being run by the servants of the defendant at a high and negligent rate of speed, to wit, at the rate of from twenty-five to thirty miles per hour, at the time said child was struck"; that "said rate of speed within the limits of an incorporated and populous city was grossly negligent and showed a reckless disregard of human life." Taking the allegations as to the locality where the train was being run at the time of the accident and the rate of speed at which it was then being run, could the court, upon demurrer, determine that the train was not being moved "at a high and negligent rate of speed," or that the rate of speed was not "grossly negligent" and did not show "a reckless disregard of human life"? Could the court decide, as matter of law, that there was nothing in the petition which showed that the speed of the

train was not regulated by due regard for the safety of the public? Under these circumstances, would all reasonable minds come to the conclusion that there was no negligence on the part of the employees of the defendant who had charge of its train? If not, if different minds might honestly draw different conclusions from these facts, the court should not have dismissed the case upon demurrer to the petition, unless it appeared that the plaintiff had no right to recover even if he showed that the death of his child was caused by the negligence of the defendant. Thomp. Trials, 1208, and cases cited.

If to the allegation that the train was running at the rate of from twenty-five to thirty miles an hour, through the limits of a populous city, we add the further allegations that the engineer, if he had been looking in the direction in which the train was rushing, could have seen the child for a distance of one hundred yards before the engine reached her, but had allowed his attention to be diverted from the track in front of him to objects on the side of the road, would all reasonable minds conclude that there was no negligence on his part? We think that the mere statement of the question, if it does not show a clear case of prima facie negligence on the part of the defendant, certainly makes a case for determination by a jury; especially is this true in a jurisdiction where it has been repeatedly held that negligence is peculiarly a question for the jury. In Norfolk & Western R. Co. v. Carper, 88 Va. 556, 14 S. E. Rep. 328, it was held, that "A railroad company running its trains through a town must exercise greater diligence to prevent injuries to persons and property than is required of it in less frequented and populous localities." In Townley v. Railway Co., 63 Wis. 626, it was held, that "A railroad company is bound to provide a careful lookout in the direction in which a train is moving, in places where people, and especially where children, are likely to be upon the track." Cassoday, J., who delivered the opinion in the case, said this rule seemed to be pretty well settled; citing Butler v. Railway Co., 28 Wis. 487; Ewen v. Railway Co., 38 Wis. 613; Farley v. Railway Co. (Iowa), 9 N. W. Rep. 230; Frick v. Railway Co., 5 Mo. App. 435; Cheney v. Railway Co., 16 Hun, 415. In Alabama it is

held, that "It is the duty of the employees of a railroad com-
pany running a train within the corporate limits of a city or
town, where necessity may compel or usage sanction walking
upon the track at places other than at public crossings, to keep
a vigilant outlook, even for trespassers, and a failure to do
so would be negligence for which the company would be
liable." South & North Ala. R. Co. v. Donovan, 84 Ala. 141,
4 So. Rep. 142. In that case Somerville, J., said: "Railway
companies, operated by steam power, are required to use
very great care; and this care must be graduated to suit the
exigencies of increased danger whether to employees, pas-
sengers, or the public." See also Railroad Co. v. Shearer, 58
Ala. 672; Railroad Co. v. Sullivan, 59 Ala. 272; Frazer v.
Railroad Co., 81 Ala. 185. It has been repeatedly held by the
Supreme Court of Missouri, that greater care is to be exercised
by persons managing a train of cars, within the limits of a
town or city, than is required in the country. Brown v. Rail-
road Co., 50 Mo. 461; Maher v. Railroad Co., 64 Mo. 276;
Hicks v. Railroad Co., Ib. 439; Harlan v. Railroad Co., 65 Mo.
24; Frick v. Railway Co., 75 Mo. 595. From the above au-
thorities — others might be cited to the same effect — it will be
seen that if we were to hold, as matter of law, that the plain-
tiff's petition made out a case of negligence on the part of the
company, we would, in so holding, be in excellent company.
What we do hold is, that this was not a case in which the
court could hold that the allegations of the petition were not
sufficient to show that the death of the plaintiff's child was
caused by the negligence of the defendant.

2. All the grounds of the demurrer which relate to contrib-
utory negligence on the part of the child are easily disposed
of. Where from the age of the child there can be no doubt as
to its want of capacity to avoid danger, the court will decide
this question as matter of law. 2 Thomp. Neg. 1181, note;
Beach on Contributory Neg. § 117. See in this connection,
McGarry v. Loomis, 63 N. Y. 104; Pittsburg Ry. Co. v. Cald-
well, 74 Pa. St. 21; Jeffersonville R. Co. v. Bowen, 40 Ind.
545. In the State last mentioned, this rule has been applied
in the case of a child seven years old (Pittsburg R. Co. v. Vin-

ing's adm'r, 27 Ind. 513), and in Alabama where the child was under five years of age (Bay Shore R. Co. *v.* Harris, 67 Ala. 6). In Illinois and California it has been held that a child six years old is incapable of caring for its own safety. Chicago *v.* Starr's adm'r, 42 Ill. 174; Meeks *v.* So. Pac. R. Co., 52 Cal. 602. We think that there can be no doubt as to the soundness of the proposition that a child only four and a half years of age is incapable of being guilty of contributory negligence.

3. The question whether such a child is capable of rendering service of any pecuniary value to its father is not so readily disposed of. Because a child is too young to exercise any care for its own safety, we do not think it necessarily follows that it can not render any services of value to its parents. It is easy enough for a court to decide, as a matter of law, that any child of a given age is incapable of rendering valuable services, notwithstanding the allegations of a petition may be to the contrary, where the age in question is such that, according to all human observation and experience, it would be utterly preposterous to believe that a child who had not passed beyond that age could render such services. For instance, no sensible man believes that any child only a year old can perform service of value to its parents. But by gradually increasing the age we must, sooner or later, arrive at an age which is debatable ground, where reasonable minds will differ in opinion upon the question whether any child of that particular age can render service of pecuniary worth. Just when that debatable ground will be reached it is, in the very nature of things, impossible to determine. When the line is reached where it seems possible that reasonable minds may begin to differ upon this question, the only safe course for a court to pursue is to leave the determination of the question to a jury. In one case (*Southern Railway Co.* v. *Covenia*, 100 *Ga.* 46) this court thought it perfectly safe, and in entire accordance with the observation and experience of all sensible men, to hold that a child under two years of age can not have sufficient capacity to render services which can be estimated in money; and in another case (*Atlanta Consolidated Street Railway Co.* v. *Arnold*, 100 *Ga.* 566) the same conclusion was reached with reference

to a child less than three years old.   In *Sugarman* v. *Atlanta Consolidated Street Railway Co.*, 94 *Ga.* 604, where "it appeared from the declaration that the plaintiff's child, a girl not quite five years old, was killed by the negligent running of the defendant's car," it was held that the lower court erred in not allowing an amendment which alleged that the child was able to and did render valuable services.   We will not, therefore, undertake to say that it is perfectly clear that all reasonable men would conclude that every child four and a half years of age is incapable of rendering services of pecuniary value. Whatever our own opinion of the possible capacity of such a child may be, to be on the safe side we think the question whether a child of this age was able to render any valuable service should be left to a jury to decide, in the light of the evidence submitted in a given case.   We do not think, therefore, that, on account of the alleged age of the plaintiff's little daughter, it appeared, from the face of the petition, that the plaintiff had no cause of action for the loss of her services.

*Judgment reversed.   All the Justices concurring.*