## SOUTHERN RAILWAY COMPANY *v.* BARFIELD.

When, according to his own evidence, a person injured on the right of way of a railroad, not at a crossing, by the running of a train, was, at the time of the injury, walking along the track, and, seeing a locomotive approaching on the same track, stepped from that to the space between it and another track ; and when he testified that he did not look back to see if anything was coming ; that there was nothing to keep him from looking back ; that it was broad daylight ; that he could have seen the train if he had looked back ; that he did not take the pains to look back; and on the approach of a rapidly moving train on the second track he threw out his hand, striking one of the moving cars, and was thereby thrown under its wheels and injured, such person is not entitled to recover damages for the injury so sustained, and this is true whether he was a licensee or trespasser.

Argued June 12, — Decided November 29, 1900.

Action for damages. Before Judge Reid. City court of Atlanta. January 25, 1900.

*Dorsey, Brewster & Howell,* for plaintiff in error.
*J. T. Pendleton* and *D. W. Rountree,* contra.

LITTLE, J. This case was before this court at the March term, 1899, and is reported in 108 *Ga.* 704. The only question which

arose upon the record then presented was, whether the court below committed error in sustaining a demurrer to the petition. We ruled that the petition should not have been dismissed. The case was subsequently tried, and a verdict for the plaintiff in the sum of one thousand dollars was rendered against the company. The error assigned in the present record is the refusal of the trial judge to grant a new trial on the grounds set out in the motion. These we have not found it necessary to deal with seriatim, as, under his own evidence, we do not think the injured person was entitled to recover. There is no question that the plaintiff below was seriously injured, nor that his injury was occasioned by the operation of one of the trains of the plaintiff in error. It is conceded that at the time the injury occurred he was on the right of way of the railroad company, about a mile and a half from the center of the city of Atlanta and within its limits, and about fifty yards from any street crossing; and, according to the evidence of the plaintiff below, the train was being operated at a rate of speed which, in view of the city ordinance, was, on the part of the company, negligence per se. As to the manner in which it occurred the parties are at variance; the theory of the railroad company being that the defendant in error attempted to get upon a moving freight-car, and that in this attempt he slipped from the car and his foot was run over by its wheels; that of the defendant in error being that he stepped from the track on which he was walking, to avoid a passing locomotive, and that suddenly a freight-train backing at a high rate of speed passed on the track then immediately next to him, and that he was struck by the latter and thrown under the wheels of one of the cars of the train. Which of these contentions is true the jury alone can properly determine; but it may be said, in passing, that in the record the evidence that the defendant in error was attempting to board a passing train going into the city of Atlanta, at the time he was injured, largely preponderates. The jury, however, evidently accepted as true, on this point, the evidence of the defendant in error, and their finding must be regarded as settling that contention. So accepting it, we proceed to the discussion of the law which determines his rights under that finding. One of the issues presented is whether, under the facts, the railroad company owed to the defendant in error any duty at the time he was injured. It is contended by the company that he was a trespasser, that no duty was owing to

him until his presence was discovered, and that it did not know of his presence until he was injured; to which the defendant in error replies that there was a commonly used pathway between the tracks of the railroad company along the route which he was going, that pedestrians were accustomed to use this path, and that he therefore had an implied license to do so, and having such, the company owed to him the duty of ordinary care and diligence to prevent his being injured.    We are of the opinion that, under the evidence, the defendant in error can not in law be regarded as a licensee at the time he was injured.    While it was shown by a number of witnesses that pedestrians were accustomed to pass along this right of way, it was not shown that such was done by the permission of the company; and the most that can safely be deduced from the evidence is that the railroad company did not take any steps to prevent it.

On this subject Mr. Justice Hall in the *Brinson* case, 70 *Ga.* 240, very strongly said: "To consent is one thing, and is quite different from mere forbearance, on the part of the defendant, to seek redress whenever its rights are temporarily invaded by a wrong-doer.    By endurance or toleration of a trespass, we do not understand that any of a party's privileges and rights are necessarily waived or yielded, or that it ceased to be entitled to the protection afforded by the law. By direct consent to the use of its way it certainly waives any right to proceed against one thus found thereon, for any wrong that may be imputed on account of such use.    There can be no right set up by the public from mere user, however frequent or long-continued it may be.    It is so inconsistent with the rights and obligations of the company that it can not, without more, be presumed to have consented to it; least of all can it be claimed, with any show of reason, that the right of the public has, by such facts, become adverse to the right of the owner of the road."    In the case then under consideration, it was shown that it was the common custom of persons passing through the town on foot to walk along the railroad-track where the injury occurred, and that school-children, one of whom was the injured person, had been in the habit, for years, of passing along a path thereon with the knowledge of the railroad authorities.    Certainly, the facts of that case as to user of the railroad right of way by pedestrians are stronger than those in the one now under consideration.    Mr. Justice Hall treated the person injured, not as a licensee, but as a trespasser pure and simple, notwith-

standing the known usage, for reasons which are very strongly given in his opinion.    We can not take this ruling as decisive of the question, for the reason that the case was decided by two Justices, who did not fully agree.    While Chief Justice Jackson, who presided with Mr. Justice Hall, concurred in the judgment, he differed in the reasoning, and on this question said that he could not hold the school-children, under these circumstances, "to be trespassers to the extent and in the sense that the railroad company are only liable for gross negligence if any of them be killed or injured." But, even under the opinion of the Chief Justice in that case, the school-children were trespassers to a certain extent.    Certainly he indicated nothing which declared them to be licensees.    The true rule on this subject, as we understand it, is thus stated by Mr. Beach in his work on Contributory Negligence, § 212 : "Where the track of a railway company is used by pedestrians for purposes of travel, by permission of the company, such pedestrian thereby becomes a licensee.    He is no longer a mere trespasser upon the track at his peril; and this consideration enhances the duty of the employees of the company to exercise caution and increased prudence in operating the road at this point.    But that there has grown up a habit on the part of individuals, or of the public generally, to travel over the track on foot, and that no measures have been taken to prevent it, does not change the relative rights and obligations of the public and the company.    It is not the less a trespass in that it is repeated, or that there are many trespassers.    A contrary doctrine is declared in several recent cases to the effect that when the railroad permits people to pass over their grounds, they thereby tacitly license the public to come upon them, and that they do not become trespassers if they do so in a proper manner.    This is, however, contrary to the general course of authority in this country." See also Id. §§ 213, 214.

But the abstract question whether the injured person was in this case a licensee or a trespasser can not, in our judgment, control the case, although, if the rule stated by Mr. Elliott in vol. 3 of his treatise on Railroads, § 1250, be correct, the law regulating the duty which a railroad company owes to each of these classes of persons does not greatly differ.    He says:    "The better rule is that the licensee takes his license subject to its concomitant perils, and the licensor, as a general rule, owes him no duty except to refrain

from wilfully or wantonly injuring him." But we do not find it necessary, under the plain facts of this case, and the evidence of the injured person himself as to the manner in which the injury was occasioned, to discuss or pass upon the liability of a railroad company, in running its trains in cities or towns, to keep a lookout for trespassers or licensees, and the quantum of care it must exercise in these localities to these classes of persons; for the reason that, under the view we take of the law governing the right of the plaintiff to recover, the evidence does not authorize a verdict in his favor. The defendant in error, at the time he was injured, was where he had no right to be; and whatever be the duty which the law places on the railroad company as to running its trains in a city, it in no way elevates his status above that of a trespasser; and according to his own evidence he was guilty of gross negligence at the time he was hurt. In the prior decision of this case the only question made depended upon the legal effect of the allegations of the petition. There we held, as before said, that they were suffi-cient to authorize a recovery, provided the injured person was not wanting in that degree of diligence which it was incumbent upon him under the circumstances to exercise. We are now confronted with the evidence upon which he bases his right of recovery, and are satisfied that he did not exercise that degree of diligence which it was legally incumbent upon him to do, to prevent the injury, not-withstanding the plaintiff in error was, as to its rate of speed, neg-ligent in the operation of the train by which he was injured. Giv-ing to him all the right of protection which he claims, under a rule that requires a certain degree of care in the operation of a train of cars passing within the limits of a city, something, nevertheless, is demanded of him as a condition precedent to a recovery, that is to protect himself, as far as he may, against the negligence of the de-fendant company; and to this end, if by the exercise of ordinary care he could have prevented the results of that negligence, he is not entitled to recover, and this is true whether he was a trespasser or a licensee. And just here it may be said that the evidence in this case, properly construed, shows, we think, that the defendant in error was not struck by the end car of the train as it approached him. He himself testifies, that as he was going down the track an engine approached him after he crossed McDaniel street, on his right; that he stepped over to the left to get out of the way of the

engine, and as it passed him he stepped back from the middle of the track, and these cars that caught him came up behind all of a sudden in a terrible dash, and through excitement he threw out his hand to protect himself, and the cars split by him and wheeled him right under; that he threw out his hand against the car, and it dashed him down. He therefore is not definite as to which of the cars caused him to fall. Other witnesses testified positively that he was not stricken by the end car of the train, but by another somewhere in the line of the train. This is important only because, if a fact, it shows that there was room for him to stand between the passing engine and the passing train of cars, and that if he had not thrown out his hand and struck the car he would not have received the injury. Indeed, he says further, in the course of his evidence, "There may be plenty of space between the two tracks for a man to stand and let a car pass on either side of him, where a man simply gets out of the way of an engine. I don't know whether there is room there for people to stand or not." A subsequent witness, however, testifies to the number of feet between the tracks, showing ample room.

It may, therefore, be assumed with certainty that had the defendant in error, appreciating the dangerous position which he voluntarily occupied when he stepped from the track upon which he was walking to the intervening space between it and the next track, stood still, he would not have been injured. To have thrown out his hand and struck the passing car seems to have been without reason, unless the theory of the plaintiff in error be right, that he attempted to board it. He says that he did it through excitement. It could have been neither a natural nor a justifiable excitement which would cause a man, standing between a locomotive and a car, to reach out his hand and voluntarily put it against the car when going at a rate of speed of thirty miles an hour. The defendant in error says that he did this to protect himself. But he does not undertake to explain by what possibility such an act could have afforded any protection. But this is not all. In giving an account of his injury he said: "I was between the tracks, and walked over towards the other track to my left. I didn't get on that track. I got close enough to it to be struck by the train as it passed along. I didn't look back to see if anything was coming. There was nothing to keep me from looking back; it was broad day-

light; I could have seen the train if I had looked back, there was no trouble about seeing it; I took no pains to look back; I didn't take any pains to see how far the engine went."

In the case of the *Central R. Co.* v. *Smith*, 78 *Ga.* 698, Chief Justice Bleckley, in his opinion which treated of the liability of a railroad company for injuries received by a person on the track, applied certain conclusions of law to the facts of the case, which seem applicable here. He says: "The train was probably running at a much higher speed than it ought to have run so near a crossing. There was some evidence tending to show that the speed was low; but grant that it was high, too high, and that there was very great negligence on the part of the railroad company, yet it is manifest that Smith was out of his place at the time he was injured. Grant that the track was often used by persons to walk along it; that there was no objection to such use; that Smith was there by implied or tacit license; he was there under circumstances that required him to have all his senses on the alert for trains, and to get out of the way when any of them approached. It would be flagrantly unreasonable and improbable to presume that he or any one else had the shadow of a right to use the track, especially at such an hour, on any other condition. . . He quietly walked along upon the track as if it belonged to him; the train struck him, knocked him down and broke his leg, those on the engine not seeing him or being aware of his presence. It was at least as much his business to look for the engine as it was the engineer's business to look for him." Not only was the defendant in error grossly negligent, under the circumstances detailed by himself, in not looking for other trains, but, under his own evidence, had he not reached out and placed his hand against a moving car he probably would not have been injured. So that he not only contributed to his injury, but it seems to us was practically the cause of it, notwithstanding the railroad was negligent in the rate of speed at which it was running the train of cars. At least, it is clear that by the exercise of ordinary care which required him, situated as he was, to look up and down the track, to place himself in as secure a position as possible, and not voluntarily to bring any part of his person in contact with the rapidly moving car, he would probably not have been injured in any manner, certainly not in that which resulted from his act. Our conclusion, therefore, is that the verdict which

was rendered was not authorized by the evidence, and that the court erred in overruling the motion for a new trial on that ground.

*Judgment reversed. All the Justices concurring.*