## CENTRAL OF GEORGIA RAILWAY CO. *v.* BOND.

114   913
Case 2
116   648

1. The evidence, though conflicting, warranted the verdict; and the same having been approved by the trial judge, it must, in the absence of any material error of law, be allowed to stand.
2. While the instructions complained of were in some respects open to criticism, they were not calculated to mislead the jury to the prejudice of the defendant company.   On the contrary, there is no sufficient reason to doubt that they fully understood the controlling issue upon which the case should be made to turn, and resolved it favorably to the plaintiff on questions arising purely upon the credibility of witnesses.

Argued January 3,— Reargued February 17,— Decided March 12, 1902.

Action for damages.   Before Judge Littlejohn.   Macon superior court.   June 24, 1901.

*William D. Kiddoo,* for plaintiff in error.
*Hardeman, Davis, Turner & Jones* and *T. C. Taylor,* contra.

LUMPKIN, P. J.   This case was before this court at the March term, 1900, when a new trial was granted to the railway company, for reasons set forth in the opinion then filed.   111 *Ga.* 13.   At the May term, 1901, of the court below, a second verdict in favor of the plaintiff was rendered, and the case is again here upon a bill of exceptions alleging error in overruling the defendant's motion for a new trial.   The plaintiff's contentions were, that her husband was negligently killed by a locomotive drawing a train of the de-

58

fendant, which was being run at a rate of speed forbidden by an ordinance of the town of Montezuma, in which the tragedy occurred, and that he was not warned of the approach of the train. There was evidence in her behalf tending to show that the killing took place upon the track of the railroad, at a point where the same was crossed by a much-frequented path, which had been long and generally used by the public. This crossing-place, according to the evidence, was not a public street, but was used as a footway. At some time in the past people "used to pass over on wagons," but the place was not, when the homicide occurred, or for several years previously thereto, used as a crossing for vehicles. It further appeared that the railway company "had a crossing fixed there, and had a sewer-pipe put on each side of the railroad at one time." It was contended by the company, that the deceased was not, at the time the locomotive struck him, crossing the track, but was sitting upon the end of a cross-tie, apparently asleep, and that he was not seen by the engineer until a few seconds before the collision took place. The ordinance referred to above made it an offense to run any engine or train "through any part of the town [of Montezuma] at a greater rate of speed than five miles an hour, or without ringing the bell." The plaintiff's petition alleged negligence in failing to comply with the requirements of this ordinance, and also negligence in failing to observe the statutory requirements regulating the approach of trains to public-road crossings. The judge gave in charge to the jury the substance of the law embraced in sections 2222 and 2224 of the Civil Code, and in this connection said: "This statute applies only to public-road crossings and street crossings in a city, and not to any path or trail crossing the railroad, or other crossing not established by the law of the State or by municipal authority." He further stated to the jury that a "public crossing in a city or town is where a public street, laid off and kept up by the city or town, crosses the track of a railroad; and a path or private crossing, although it is used by many citizens, is not a public crossing, and the railway company is not required by law to check the speed of its train when approaching such path or private crossing." After giving this instruction, the judge added: "If you should believe from the evidence that Bond, the deceased, was at a public crossing, or a public crossing for pedestrians, made public by prescription, or a crossing which was made so by the railroad, the

same rule would not apply to him as it would to a man walking up the track or sitting upon the track. If he was crossing such a public crossing, he would have the right to rely upon the ringing of the bell to give him notice, and would also have the right to rely on the ordinance of the town of Montezuma that the engine would not run over five miles an hour. If he was at a public crossing where he had a right to be, then if the road was negligent he could recover, unless he could have avoided the injury by the use of ordinary care after he discovered the danger, or by the use of ordinary care could have discovered the danger; and the burden would be on the railroad to show that he could have avoided the injury after he discovered the danger." The evidence was extremely conflicting, and the determination of the case upon its merits depended upon whether the jury should credit the testimony of the plaintiff's witnesses or of those who were introduced in behalf of the defendant. The motion for a new trial attacked the verdict as contrary to law and the evidence and the charge of the court, and also specifically assigned error upon that portion of the charge last above quoted.

1. We have without difficulty arrived at the conclusion that it would not be proper to overrule the action of the trial judge in refusing to sustain the general grounds of the motion for a new trial. The jury evidently believed the testimony of the plaintiff's witnesses. According to the same, the plaintiff's husband was killed while attempting to cross the track of the railway company upon a pathway which was in general use by the public and one upon which the company had done work from which an invitation to the use of this crossing by the public might reasonably have been inferred. Under the evidence just referred to, the jury were warranted in concluding that the deceased was not a trespasser, but had the right to be upon this crossing. The testimony of these witnesses was also sufficient to establish the plaintiff's contention that the servants of the company in charge of the train were violating the municipal ordinance above referred to, both in running at a greater rate of speed than five miles an hour and in failing to ring the bell of the locomotive while running through the town. In view of the foregoing, we can not say that his honor below abused his discretion in upholding the findings of the jury upon the issues of fact involved.

2. The remaining point for our determination is whether or not a new trial should be ordered because of the instructions to which exception is taken. The charge complained of is, we think, open to the criticism that in giving the same the judge was, to some extent at least, dealing with the footway across the company's track as if it were a crossing of the kind to which sections 2222 and 2224 of the Civil Code, regulating the approach of trains to "road crossings" or "public roads," apply. This, in our judgment, was erroneous; but the real question is: Does the error thus committed warrant the granting of a new trial? We think not. It is clear that the judge had in mind not only the provisions of the code sections above cited but also the requirements of the municipal ordinance. As will have been seen, he informed the jury that a mere footway across a railroad-track was not a crossing to which these code sections were applicable; and in charging with respect to the right of the plaintiff's husband to use such a footway, it is obvious that his honor intended to convey to the jury the idea that if the deceased was attempting to cross the track of the railroad at a point where he had a right to be, he was entitled to the protection afforded by the municipal ordinance. It is true that the judge did not, in this connection, expressly call attention to that portion of the ordinance which required the bell to be rung, but only to the prohibition against running at a speed of over five miles an hour; and it is, we think, but fair to say that in using the expression, "he [the deceased] would have the right to rely upon the ringing of the bell to give him notice," the judge was probably referring to the law embraced in section 2224 of the Civil Code, and not that contained in the ordinance. At any rate, the charge on this point is not clear or entirely satisfactory. But how could it have resulted in any injury to the company? If, under the circumstances, the deceased was, either under the statute or the ordinance, entitled to be warned of the approach of the train by the ringing of the bell of the locomotive, we are unable to see what practical difference it could make from what legal source his right to such protection was derivable. If he was on a crossing upon which, by invitation of the company, he had a right to be, and the law imposed upon it the duty of ringing the bell of its locomotive in approaching this crossing, the failure of the company's servants to ring the bell was an act of negligence, whether such failure was in

disregard of a section of the code or of a municipal ordinance. We would not, therefore, be justified in ordering a new trial merely because the trial judge incorrectly informed the jury as to how the legal duty of the company to ring the bell arose.

It is further complained that the last sentence of the charge to which exception is taken " was improper, because there was no evidence that the deceased, Bond, was at a public crossing, and it placed a burden on the defendant neither authorized by the evidence nor the law." We are by no means clear that by the use of the words, "If he was at a public crossing where he had a right to be," the judge intended to refer to a crossing in approaching which it was incumbent upon the persons in charge of the company's train to observe the requirements of the code sections mentioned above. It is a reasonable inference that the judge used the expression "public crossing" in this connection entirely with reference to the footway. It was a crossing, and, in a sense, a "public" crossing. It is true that in an instruction immediately preceding the charge excepted to, the judge had informed the jury that a "public crossing in a city or town is where a public street, laid off and kept up by the city or town, crosses the track of a railroad;" but he had previously instructed the jury, in substance, that such a crossing as that upon which the deceased was alleged to have been killed was not a public crossing, and, immediately in connection with the language last quoted, also stated to the jury that "a path or private crossing, although it is used by many citizens, is not a public crossing." These various expressions used by his honor were not entirely consistent or reconcilable with each other; but, as already in substance remarked, it is reasonable to infer that in alluding to "a public crossing where [the deceased] had a right to be," the judge intended to call the attention of the jury to just such a crossing as that upon which the plaintiff claimed her husband was killed. Granting, however, for the sake of the argument, that his honor then had reference to a crossing of the kind dealt with in sections 2222 and 2224 of the Civil Code, we are quite sure that, although the instruction complained of was not warranted by the evidence, a new trial should not for this reason result. There was, it is true, no evidence that the homicide occurred upon a crossing of the kind last indicated; but, in view of the entire evidence, it was impossible for the jury to have been misled as to the real issue in the case, viz.:

whether the deceased at the time he was killed was a trespasser, or was lawfully in the act of crossing the railroad track at a point where he had a right to cross, and met his death because of a negligent failure on the part of the company's servants in charge of its train to observe the requirements of the municipal ordinance of Montezuma. After much deliberation we have reached the conclusion that the jury must have advisedly, and with full knowledge of the fact that the case turned upon their decision of this controlling issue, given credit to the testimony introduced by the plaintiff with regard to the circumstances under which the homicide occurred; and accordingly we do not feel at liberty to set their verdict aside on the ground that the instructions complained of by the railway company really operated to its prejudice.

*Judgment affirmed. All the Justices concurring, except Little, J., absent.*