27692, 27699.   LASSITER *v.* ATLANTA AND WEST POINT RAILROAD COMPANY, and *vice versa.*

DECIDED OCTOBER 11, 1939.   REHEARING DENIED NOVEMBER 13, 1939.

*Pearce & John S. Matthews,* for plaintiffs.

*Heyman & Heyman,* for defendant.

FELTON, J.  A person who crosses the tracks of a railroad company, not at a public crossing, or at a private crossing established by law, or at a crossing which the railroad keeps up or helps to keep up, but at a place where people are accustomed to cross, and where the railroad has done nothing in an affirmative way, and has merely taken no action to prevent such customary crossing, is a trespasser.  *Tice* v. *Central of Georgia Railway Co.,* 25 *Ga. App.* 346 (103 S. E. 262); *Pope* v. *Seaboard Air-Line Ry. Co.,* 21 *Ga. App.* 251 (94 S. E. 311); *Dodson* v. *Southern Railway Co.,* 55 *Ga. App.* 413, 417 (190 S. E. 392); *Hammontree* v. *Southern Ry. Co.,* 45 *Ga. App.* 728 (165 S. E. 913); *Southern Railway Co.* v. *Barfield,* 112 *Ga.* 181 (37 S. E. 386).  In an action based on ordinary negligence, a railroad company is not liable for an injury to such person when the undisputed evidence shows that she had an unobstructed view of the tracks for at least ten feet, and could have discovered that a train was approaching and thereby avoided injury by simply looking along the track.  The fact that the pathway across the track was rough would make no difference, inasmuch as due care requires that a trespasser must anticipate the danger from an approaching train as much or more than injury from stumbling on a rough path leading to and across railroad-tracks. In such circumstances the trial court correctly granted a nonsuit. See cases cited herein.  This ruling is not in conflict with the decisions which hold that the stop, look, and listen rule does not apply to persons who are not trespassers, and that a court can not say as a matter of law what degree of care a person not a trespasser must exercise in going upon a railroad-track.

*Judgment affirmed on the main bill of exceptions.  Cross-bill of exceptions dismissed.  Sutton, J., concurs.*

STEPHENS, P. J., dissenting.  The husband and minor children of Mrs. Mary F. Lassiter brought suit for damages against A & W. P. Railroad Company, for the death of their wife and mother, on account of the alleged negligence of the servants of the defendant in operating a train of the defendant in approaching a private railroad crossing.  At the conclusion of the evidence for the plaintiffs the judge granted a nonsuit, and to this judgment the plaintiffs excepted.  It is contended in support of the grant of

nonsuit that Mrs. Lassiter could have seen the train approaching the crossing, and that she was killed by the train as a result of her own failure to exercise ordinary care in going upon the crossing. The plaintiffs contend that, as the train approached along the defendant's tracks from the north, Mrs. Lassiter's vision was obstructed because of certain shrubbery and grass growing within a few feet of the track on which the train was approaching; that the pathway leading from a street-car stop, where Mrs. Lassiter got off a street-car, to the tracks of the defendant went up a sharp incline of about five feet, and was rough, being of stones and bricks; that the heavy traffic of automobiles and street-cars along an adjacent street prevented her from hearing the natural noise made by the approaching train; that the train approached the crossing at a speed from twenty to twenty-five miles an hour, without slackening its speed; and that the engineer did not blow any whistle or ring any bell or otherwise look out for the presence of persons upon the crossing, although it was a crossing in constant use for more than ten years, of which the defendant had knowledge and had not attempted to prevent persons from using, and it was therefore bound to anticipate the presence of persons thereon.

On the question as to shrubbery and grass obstructing the view of Mrs. Lassiter, Lex Jolly testified, in part, as follows: "Up towards Atlanta, I guess you call that up from the station, there was some shrubbery and bushes, things like that grown up. They were up higher than the opening of the shed. Then I know there was a big bunch of, I call it, Johnson grass; grows up big, you know, about some six or eight feet high, up by the railroad. It was higher than my head at that time, something near six feet. That was along in kind of a ditch, whatever you call it, along the right of way; and then as you got off the street-car you walked out from under that shed a few steps and start up an incline up to the railroad-tracks. . . I walked under the shed up on to the railroad-tracks, and as I went up on the railroad-tracks I could not see any distance hardly until I got right on the track, until I got right up to the track going out from under the shed. I could not see up the track at that time. . . I went out there to see where this accident occurred. The Johnson grass, at that time, was about six feet high. I looked the situation over, and the grass was there. I didn't measure it, but I would say it was something like the

height of my head, which is nearly six. The ground about where the person would be walking there would be about the same level to the Johnson grass, and would probably be looking up at an angle that way; that is, it would be possible to look over that grass without seeing the train." Mrs. May L. Horton testified: "This was all grown up in weeds here, and when you got over from this little place over here, as I told you before, stepped off these crossties in a little ditch that comes down to the shed. This was all grown up in weeds and grass, at that time, on the side this lady was going." Mrs. Stella Margaret Cochran testified: "All of the shrubbery there on the left you know, and there is no way you could see the train until it just come right up on you." Mrs. B. S. Bray testified: "The right of way generally grows up between the railroad-tracks and the street-car tracks in grass to a certain extent." There was evidence that this shrubbery stopped near the end of the car-shed, and that one could see a train approaching several hundred feet up the track. There was evidence that Mrs. Lassiter was attempting to cross the tracks of the defendant at a crossing which had been in use by the public for more than ten years. It is inferable that the railroad company knew this.

It is presumed, as alleged, that the defendant was negligent in not anticipating the presence of persons on the track at this crossing. It is inferable that Mrs. Lassiter was not a mere trespasser to whom the defendant owed no duty except to refrain from wilfully and wantonly injuring her until her presence on the crossing became known. "Where persons habitually, with the knowledge and without the disapproval of the railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of the custom, are bound, on a given occasion, to anticipate that persons may be upon the tracks at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence." W. & A. R. Co. v. Michael, 175 Ga. 1 (6) (165 S. E. 37). In Georgia Railroad &c. Co. v. Cromer, 106 Ga. 296 (31 S. E. 759), the Supreme Court held "Where a railroad-crossing is in a populous locality and is much used by the public, but the same is not within the limits of an incorporated city or town and is not a part of a public road established pursuant to

law, what rate of speed in approaching and running over such crossing would be negligence, and what signals ordinary care would require to be given, are matters to be determined by a jury according to the circumstances of each particular case." It is stated, in *Crawford* v. *Southern Ry. Co.,* 106 *Ga.* 870, 873 (33 S. E. 826): "Conduct which might, under one set of circumstances, show that all ordinary and reasonable care and diligence had been observed, might, under a different set of circumstances, be insufficient to show an observance of such care and diligence. We think that such a rule could mean no more than this: taking the locality where the train is running and all the surrounding circumstances, if those in control of the movement of the train have no reason to apprehend that there may likely be a human being on the track in front of the engine, they are under no duty to one who may in fact be there. But if, from the locality or surrounding circumstances, there is reason to apprehend that the track in front of the locomotive may not be clear of human beings, then, it seems to us, it is the duty of the employees of the company to keep a lookout ahead of the train; most assuredly so unless they are performing some duty which prevents their looking out upon the track in the direction in which the train is moving." In Shearman & Redfield on Negligence, quoted with approval in *Crawford* v. *Southern Ry. Co.,* supra, the rule is laid down thus: "Where a road passes through a populous district, without being closely fenced in, or for any other reason persons are likely to be near the track, the speed of trains should obviously be diminished in proportion to the liability of meeting persons on the track."

The evidence authorized a finding that the train approached the crossing at a speed of from twenty to twenty-five miles per hour, that this was a populous locality just outside the city limits of East Point, that the whistle was not blown until the train was within about ten feet of Mrs. Lassiter, that the bell was not rung, and that there was no slackening of the speed of the train. It is presumed, as alleged, that the engineer was not keeping a lookout ahead. The evidence authorized a finding that the railroad company was guilty of negligence in the operation of its train at the time and place, and that its negligence was the proximate cause of the death of Mrs. Lassiter, unless it appeared conclusively and as a matter of law that she negligently went upon the track and that

this negligence was the proximate cause of her death. Was Mrs. Lassiter guilty of such negligence as would bar a recovery? There was evidence from which the jury could infer that her view of the approaching train was obscured, that she was not aware of the approach of the train, and that she undertook to cross the railroad-track at a crossing at which the servants of the railroad company in the operation of the train were bound to anticipate the presence of persons. In *Vaughn* v. *L. & N. R. Co.,* 53 *Ga. App.* 135 (185 S. E. 145), it was held: "A person who, in walking across a railroad-track along a pathway which is customarily used by the public at all hours of the day with knowledge of the railroad company, does not see and is not aware of an approaching train on the track because his back is turned towards the train and is oblivious of the movements of the train because the train is rolling and making very little noise and no warning is given by those operating the train of the train's approach, is not as a matter of law guilty of negligence which would bar a recovery in damages for injuries received by him by being hit by an approaching train." See *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (3) (154 S. E. 718); *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708, 711 (39 S. E. 306, 54 L. R. A. 802). Whether the failure of Mrs. Lassiter to stop, look, or listen before going upon the railroad-track, and whether her going upon the track, under conditions which a jury were authorized to find from the evidence was negligence on her part barring a recovery, are questions of fact for determination by a jury. This is not a case where Mrs. Lassiter, with actual knowledge of the danger, and with manifest imprudence, attempted to cross the track ahead of an approaching train. The evidence was sufficient to authorize a finding that the defendant was negligent in the operation of its train at the time and place, and that the death of Mrs. Lassiter was caused by the negligence of the railroad company, and not by the negligence of Mrs. Lassiter. The court erred in granting a nonsuit.