27708. WILSON, administrator, *v.* POLLARD, receiver.

DECIDED JULY 5, 1940.

*Arnold, Gambrell & Arnold, Ernest M. Smith,* for plaintiff.
*Beck, Goodrich & Beck,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.)

■ Where a person killed as a result of a crime or criminal or other negligence leaves no child, spouse, or dependent parent surviving, "the administrator or executor of the decedent may sue for and recover and hold the amount recovered for the benefit of the next of kin, if dependent upon the decedent, or to whose support the decedent contributed. In any such case the amount of the recovery shall be determined by the extent of the dependency or the pecuniary loss sustained by the next of kin." Code, § 105-1309. The question whether or not under this section a temporary administrator is authorized to maintain a suit was certified to the Supreme Court, with certain other questions arising in this case, and that court answered that "A temporary administrator is authorized to maintain the suit provided for under the Code, § 105-1309." *Wilson* v. *Pollard,* 190 *Ga.* 74 (8 S. E. 2d, 380).

■ There is no merit in the contention that a jury would not have been authorized to find from the evidence that Mrs. Aiken did not contribute to the support of the families of her brother and sisters, and that such brother and sisters were not dependent to an extent upon Mrs. Aiken. The jury were authorized to find that both contribution and dependency existed under the facts of this case. See instructions of the Supreme Court in response to requests therefor in this case, *Wilson* v. *Pollard,* supra. The Supreme Court held as follows: "Where a married woman living with her husband and receiving support from him, has an unmarried sister living in the house with her and performing all duties connected with housekeeping, but receiving food, lodging, and clothes from her or her husband, the value of which is less than her services, such married woman is dependent upon and receives contributions to her support from the sister, sufficient to authorize a recovery under the Code, § 105-1309. Where the unmarried sister lives in like manner with another married sister and a brother, spending three months yearly with each sister and six

months with the brother, recovery is authorized on behalf of each for the tortious homicide of such unmarried sister. In order to authorize a recovery under the Code, § 105-1309, both dependency *and* contribution must exist." The evidence tended to show that each of the parties for whom the plaintiff administrator brought this action was partially and to some extent dependent upon the services contributed by Mrs. Aiken, and that each sustained "pecuniary losses" by reason of her death.

Mrs. Aiken was killed by being struck by a locomotive of the defendant at a private crossing which had been maintained, and still was being maintained, by the railroad company. The evidence was that persons habitually used this crossing. It is alleged in the petition, as one of the acts of negligence charged against the defendant, that the engineer and fireman in charge of the train failed to keep a proper lookout ahead along the track as the train approached the crossing, in order to be able to warn persons of danger from the approaching train. There being no evidence whatsoever rebutting this allegation of negligence, the negligence here alleged is established by the presumption. It therefore appears that the defendant was negligent as alleged, which includes negligence in failing to anticipate the presence of persons on the track at the crossing. "Where persons habitually, with the knowledge and without the disapproval of the railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of the custom, are bound, on a given occasion, to anticipate that persons may be upon the tracks at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence." *Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1 (6) (165 S. E. 37). Where a railroad passes through a locality in the country where it is known that persons habitually use a private way maintained by the company in crossing its tracks, and that persons are likely to be near such track, the speed of the train "should obviously be diminished in proportion to the liability of meeting persons on the track." *Crawford* v. *Southern Ry. Co.,* 106 *Ga.* 870, 875 (33 S. E. 826). In *Georgia Railroad &c. Co.* v. *Cromer,* 106 *Ga.* 296 (31 S. E. 759), it was held: "Where a railroad crossing is in a populous locality and is much used by the

public, but the same is not within the limits of an incorporated city or town and is not a part of a public road established pursuant to law, what rate of speed in approaching and running over such crossing would be negligence, and what signals ordinary care would require to be given, are matters to be determined by a jury according to the circumstances of each particular case." See also *W. & A. R. Co.* v. *Meigs,* 74 *Ga.* 864; *Central of Ga. Ry. Co.* v. *Bond,* 114 *Ga.* 913, 915 (41 S. E. 70). It is a question of fact whether the engineer of the train was guilty of negligence proximately causing the death of Mrs. Aiken in failing to give adequate and sufficient warning of the approach of the train by ringing the bell, blowing the whistle, or otherwise, and in operating the train at a dangerous rate of speed according to the time, locality, and circumstances. See *Goswick* v. *W. & A. R.,* 54 *Ga. App.* 164, 166 (2) (187 S. E. 205).

A person can not be charged with the duty of using any degree of care and diligence to avoid the negligence of a wrong-doer until he has reason to apprehend the existence of such negligence. "The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing and is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence. . . Failure to exercise ordinary care on the part of the person injured, before the negligence complained of is apparent, or should have been reasonably apprehended, will not preclude a recovery." *W. & A. Railroad Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802). But in such a case, such fault or failure to exercise due care at such time would authorize the jury to diminish the damages in proportion to the amount of fault attributable to the person killed.

Whether under all the circumstances the plaintiff's intestate in this case, in stepping upon the crossing without stopping, looking, and listening, was guilty of such conduct as to defeat or diminish a recovery, is a question for the jury. This is not a case where the plaintiff's intestate, seeing and knowing the danger, in manifest imprudence attempted to cross ahead of the train. There was evidence that Mrs. Aiken's eyesight was not good, that she was unable to clearly distinguish objects at a distance; that there was a gradual curve of the defendant's track in the direction from which the train

was approaching; that there were obstructions which might impair one's vision in detecting a train approaching from that direction; and that there was a railroad cut and high banks south of the crossing and on this curve. The evidence was that no whistle was blown as the train rounded the curve and approached the crossing. It can be inferred from the evidence that the plaintiff's intestate was not aware of the approach of the train, and that the defendant's negligence, if it were negligence, in approaching this crossing had not become apparent to the plaintiff's intestate at the time she attempted to cross the railroad tracks at this point. It has been held that the court might properly charge the jury that "the precise thing which every person is bound to do before stepping upon a railroad track, is that which every prudent man would do under like circumstances," and that "if prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means." "But this is an entirely different thing from the court undertaking to decide for itself, and as a matter of law, what such a person . . entering upon a public or private railroad crossing must or must not do in order to free himself of a guilt of a lack of ordinary care constituting the proximate cause of his injury. On the contrary, it has been many times ruled that such a question is one to be determined by the jury as a question of fact, rather than by the court as a matter of law. This long line of decisions, contrary to the rule in some jurisdictions, is to the effect that it can not be said, *as a matter of law,* that the failure on the part of a person approaching and entering upon a railroad crossing, and unaware of the approach of a train, to stop, look, or listen, renders such person guilty of a lack of ordinary care such as would prevent recovery." *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759, 761 (3) (154 S. E. 718). "Failure of the injured party in the use of ordinary care by untimely stepping upon a railroad track at a public crossing, is no complete bar to the recovery of damages, unless by the use of ordinary care the consequences due to the negligence of the other party could have been avoided. And whether they could or not is a question for the jury." *Richmond & Danville R. Co.* v. *Howard,* 79 *Ga.* 44 (2) (3 S. E. 426). In *Wright* v. *W. & A. Railroad Co.,* 139 *Ga.* 343 (77 S. E. 161), it was held that it should have been left to the jury to say whether the plaintiff knew

or ought to have known the engine was approaching and was dangerously near and undertook to cross the track, and whether this constituted negligence either barring a recovery or diminishing the amount recoverable.

It is inferable that because of her impaired eyesight, the obstructions near the track in the direction from which the train was approaching, and because no warning was given by those operating the train of its approach, Mrs. Aiken could not see and was not aware of the approaching train on the track. It is inferable that had Mrs. Aiken looked as she approached the railroad-track she could not, on account of her impaired eyesight, have seen the approaching train. As her hearing was good and as the wind was blowing from the direction from which the train was approaching it is inferable that the train was running without sounding any alarm, and that she did not hear the train. This being the case, she could not be accounted negligent as a matter of law in failing to stop, look, and listen, or in failing to hear the train. The facts here are distinguishable from those in the *Lassiter* and *Parkman* cases, 61 *Ga. App.* 23, 62 (5 S. E. 2d, 603, 685), in which it was held that the injured person could have seen the train if he had looked before stepping on the track. In *Vaughn* v. *L. & N. Railroad Co.,* 53 *Ga. App.* 135 (185 S. E. 145), it was held that "A person who, in walking across a railroad-track along a pathway which is customarily used by the public at all hours of the day, with knowledge of the railroad company, does not see and is not aware of an approaching train on the track because his back is turned towards the train and is oblivious of the movements of the train because the train is rolling and making very little noise and no warning is given by those operating the train of the train's approach, is not as a matter of law guilty of negligence which would bar a recovery in damages for injuries received by him by being hit by an approaching train." It was error to grant a nonsuit.

*Judgment reversed. Sutton and Felton, JJ., concur.*