THE RICHMOND AND DANVILLE RAILROAD COMPANY vs. HOWARD.

1. To say that the burden of proving a fact is on the plaintiff, implies that there is no burden on the defendant to establish the non-existence of such fact.

2. Failure of the injured party in the use of ordinary care by untimely stepping upon a railroad track at a public crossing, is no complete bar to the recovery of damages, unless by the use of ordinary care the consequences due to the negligence of the other party could have been avoided. And whether they could or not is a question for the jury.

3. The court can not point out to the jury specifically the ways of the prudent, the law supposing these ways better known to the jury than to the judge. It is not incumbent upon the court to instruct the jury that it is the duty of one who attempts or intends to cross a railroad track to use his senses of hearing and seeing before stepping on the track.

4. Ordinary care is that care which every prudent man observes; and to describe it as synonymous with, or about equivalent to, common prudence, is not misleading, especially when this exposition is applied alike to the conduct of both parties.

5. Points and principles sufficiently covered by the general charge need not be repeated.

6. As matter of stern legal duty, this court yields its strong doubts of the correctness of the verdict.

March 21, 1887.

Railroads. Damages. Negligence. Burden of Proof. Before Judge Marshall J. Clarke. Fulton Superior Court. September Term, 1886.

Addie Howard brought suit against the Richmond and Danville Railroad Company to recover damages for the homicide of her husband. On the trial, the evidence was voluminous and conflicting, and only the most salient parts of it need be stated. That for the plaintiff was, in brief, as follows: At a point within the corporate limits of Atlanta, the tracks of the Richmond and Danville and Georgia Railroads run nearly parallel for some distance. The former then curves away as it leaves the city. In coming towards the union depot, they use a switch in common. For some distance Decatur street runs alongside of these tracks, finally crossing the R. & D. track. At a point near where the curve begins, a street or road parts from Decatur, crosses the tracks and runs in the direction of a factory. This crossing is generally known as the factory crossing and is in common use by the public for both foot-passers and vehicles. At the point where this street starts, Decatur street is somewhat elevated above the railroad track, and as the R. & D. track curves away, the elevation increases to an embankment of considerable height, so that, as one leaves Decatur street to cross the railroad track, his view on the left is obstructed by this embankment, and it is difficult, if not impossible, to see an engine for any considerable distance until he arrives at the crossing. On a Sunday morning in November, 1884, the plain-

tiff's husband, who resided on a street running out from Decatur street further from the center of the city, left his home, stating to his wife that he intended to go to the hotel in the city where he was employed as a porter. After this, she never saw him. Other witnesses saw him leave Decatur street and start across the factory crossing. A train on the Georgia Railroad was entering the city, and an engine on the R. & D. running backwards was coming. The engines were nearly parallel to each other, and both were moving at from ten to fifteen miles an hour. The engineers seemed to be racing, each with a view to arriving at the switch first. The defendant's engine was in charge of a "hostler," a species of subordinate engineer, who ran trains from the shops to the depot, but not on the main line. He was sitting down with one foot out of his cab window and his hand on the throttle, and when the fireman called to him, he had to turn around and catch hold of the lever to stop his engine. His bell was not being rung. As deceased got on the crossing, the engine ran to within a short distance of him. The fireman called to the engineer to "look out." Had the latter been in a different position, he could have stopped his engine. It ran over plaintiff's husband killing him instantly and mutilating him almost beyond recognition. Some witnesses who saw the corpse testified that from his appearance they thought it was the plaintiff's husband. The shoes taken from his feet were given to the plaintiff some days later and she recognized them as his. Deceased was about thirty-four years old and was earning $1 per day.

The evidence for the defendant was, in brief, as follows: Immediately at the factory crossing there is no embankment. Just beyond it the bank begins to rise and gradually continues until, at a point 300 feet from the crossing, it is ten feet high, whence it again slopes downward. At a distance of 20 feet from the crossing, the bank is only two or two and a half feet high, and at a distance of 30 feet, it is four feet high. The crossing is about two feet

lower on Decatur street, the slope downward being gradual and the distance from Decatur street being 23 feet. Standing on Decatur street at the point where this cross-street begins, an engine can easily be seen 400 feet away. The curve does not begin at the crossing, but 800 feet from it, and the track is straight for that distance. On the morning of the accident, the train on the Georgia Railroad was arriving, and at the same time defendant's engine was being backed to the depot for the purpose of being attached to the passenger train. They were not racing, but were running slowly, the speed of defendant's engine being not over five miles an hour, and that of the Georgia Railroad train slightly more. Defendant's engine was not parallel to that of the train, but some distance behind it and opposite to one of the coaches. As the engine approached the factory crossing, its bell was being rung, and both the engineer and fireman were in their places attending to their duties. The former did not have his foot out of the window. About this time, a negro came from Decatur street down to the crossing and turned in the direction of the city, walking alongside the track. Very soon he stepped on the track directly ahead of the engine and within a few feet of it. The fireman saw him as he came to the crossing and approached the track. He signalled to the engineer and spoke to him. The engineer threw his lever "in the forward gear," but it was impossible to stop the engine before striking the man. He might have stopped it sometime after running over the man, but was nervous, did not think it necessary and did not do so. One witness testified that he saw the man run along the side of the track, step on it in front of the engine and try to get on as if to ride, but his foot slipped and he was run over. As to the distance the man was from the crossing when struck, the evidence varied widely, it being estimated at from 15 or 20 feet up to 75 yards. The most direct and convenient route from plaintiff's home to his place of employment was not by way of this crossing. The person

48    SUPREME COURT OF GEORGIA.

The Richmond and Danville Railroad Company vs. Howard.

killed did not resemble in person or clothing the one described by plaintiff's witnesses, and the witnesses who identified him on the present trial did not do so at the coroner's inquest.

The jury found for the plaintiff $2,594.70. The defendant moved for a new trial on the following grounds:

(1)–(2) Because the verdict is contrary to law and evidence.

(3) Because the court refused to give the following charge: "Your oath requires you to find a true verdict, according to the law and the evidence, regardless of who the parties are. A railroad company is entitled to the same kind of trial and to the same rights as other parties, and there is no exception in your oath against such companies. If you had any prejudice or bias on your mind for or against either party when you entered the jury-box, it is your duty to put it aside and to find a true and impartial verdict in the case."

(4) Because the court refused to give the following charge: " Before the plaintiff can obtain a verdict in this case, she must satisfy your minds by a preponderance of the evidence that the dead man was her husband and was lawfully married to her; that is to say, you must be convinced by a preponderance of evidence that the dead man was Ephraim Howard, and that the plaintiff was lawfully married to him. If the evidence does not satisfy your minds on this point, then your investigation would stop here, and your verdict would be for the defendant."

(5) Because the court refused to give the following charge: "The burden of proving to you that the dead man was her husband is now on the plaintiff, and the defendant is not under the burden of proving that he was not her husband, or of showing where her husband is. The plaintiff is required to convince you that the dead man was her husband."

(6) Because the court refused to give the following charge: "If you are convinced from a preponderance of

the evidence that the dead man was Ephraim Howard, and that the plaintiff was lawfully married to him, then you will go to the next branch of the case."

(7) Because the court refused to give the following charge: "The same evidence which raises a presumption against the railroad company may rebut that presumption by showing either that the defendant was not negligent, or that the plaintiff, by the exercise of ordinary care, could have avoided the injury."

(8) Because the court refused to give the following charge: "If the dead man, by the exercise of ordinary care, could have avoided the injury, the plaintiff cannot recover, even if you believe the employés of the railroad company were at fault. Ordinary care is that care which every prudent man would use under similar circumstances. If you believe from the evidence that the dead man stepped on the track a few feet in front of the engine or tender, and that if he had looked before stepping on, he could have seen the engine in time not to step on the track, and that in thus stepping on the track, he was not in the exercise of ordinary care, then the plaintiff cannot recover, and it would be your duty to find for the defendant."

(9) Because the court refused to give the following charge: "When one attempts or intends to cross a railroad track, it would be his duty, before stepping on the track, to use his senses of hearing and seeing, and if he fails to do it, and you believe that in such failure he was not in the exercise of ordinary care, and that ordinary care required him to look and listen, and if he had done so he would have avoided the injury, then your verdict should be for the defendant."

(10) Because the court erred in charging the jury that "ordinary and reasonable care and diligence is about equivalent to common prudence," after giving them the definition of ordinary care in this language: "Ordinary and reasonable care and diligence means that care which every

prudent man takes in reference to his own affairs of a similar nature"; and the court further erred in charging the jury in another and subsequent part of his charge: "Ordinary care in this connection is to be understood as defined above, and is synonymous with common prudence." Those charges were error. They were not a proper and legal definition of ordinary and reasonable care, and misled the jury.

The motion was overruled, and the defendant excepted.

Hopkins & Glenn, for plaintiff in error.

Gartrell & Wright; Bigby & Dorsey; Harrison & Peeples, for defendant.

Bleckley, Chief Justice.

A widow brought an action against a railroad company for the homicide of her husband. The trial was had upon very voluminous evidence. The jury found a verdict for the plaintiff. The defendant moved for a new trial on various grounds. The motion was denied, and that is the basis of this writ of error.

1. Amongst the grounds of the motion for a new trial was one which complained that the judge declined to give a request in charge to the jury, which request sought to protect the defendant against the burden of proof as to the negative of certain propositions. The court, instead of giving that request, gave, in its general charge, instructions that to recover, it was necessary for the plaintiff to prove the affirmative of these propositions; in other words, the court told the jury that the burden of proving these things was upon the plaintiff. There is nothing in this ground of the motion. To say that the burden of proving a fact is on the plaintiff, implies that there is no burden on the defendant to establish the non-existence of such fact.

2. Another request to charge was denied. By doubtless an unconscious ingenuity, this request omits an essential element of correctness. It submits to the jury whether a specific act would be consistent or inconsistent with ordinary diligence; but it fails to refer it to the jury to determine whether the deceased could, by the exercise of ordinary diligence, have avoided the consequences of the defendant's negligence. "If you believe from the evidence that the dead man stepped on the track a few feet in front of the engine or tender, and that if he had looked before stepping on, he could have seen the engine in time not to step on the track, and that in thus stepping on the track he was not in the exercise of ordinary care, then the plaintiff cannot recover, and it would be your duty to find for the defendant." This request stakes the whole case upon a step; and while it refers to the jury the question as to whether the taking of that step was a deviation from ordinary care, it does not refer to the jury the question as to whether the observance of ordinary care would have enabled the stepper to avoid the consequences of the defendant's negligence. This step may have been chargeable to the deceased to reduce the damages as an act of contributory negligence; but the request did not limit it in any such manner; it extends it over the whole case and makes it the basis, or seeks to make it the basis, of defeating all recovery. Failure of the injured party in the use of ordinary care, by untimely stepping upon a railroad track at a public crossing, is no complete bar to the recovery of damages, unless, by the use of ordinary care, the consequences due to the negligence of the other party could have been avoided. Code, §§2 972, 3034. And whether they could or could not is a question for the jury. The court was virtually asked to decide that question, and very properly declined to do it.

3. Still another request made and declined is equally if not more ingenious, the ingenuity being, again, as we take it for granted, perfectly unconscious. The request was

this: " When one attempts or intends to cross a railroad track, it would be his duty, before stepping on the track, to use his senses of hearing and seeing; and if he fails to do it, and you believe that in such failure he was not in the exercise of ordinary care, and that ordinary care required him to look and listen, and if he had done so he would have avoided the injury, then your verdict should be for the defendant." It requires some study of this compact body of language to reach the infirmity which it covers over. The equivalent of it I have endeavored to present in a more diffuse and expanded form. It will be noticed that the request says, " When one attempts," etc., making the proposition perfectly universal. Expressing that universality in its full compass, the request will run about this way: In all cases and under all circumstances, it is the duty of any and every person, when he attempts or intends to cross a railroad track, to use his senses of hearing and seeing before stepping upon the track. If any person, in any case or under any circumstances, fails to do it, and if you believe (now since I have defined the duty of all) that in such failure he was not in the exercise of ordinary care, and if you believe that ordinary care required him to look and listen (and I have just told you that all must look and listen), and if you believe further that had he looked and listened he would have avoided the injury, then your verdict should be for the defendant.

What is the concrete substance of all this? It is, that the plaintiff's husband was bound to look and listen before stepping on the track, and if he failed to do so and was killed, but would not have been killed had he not failed, his widow cannot recover. That which is everybody's duty under all circumstances, certainly must be included in all the degrees of diligence, even the lowest, and the omission of it must be a failure in ordinary care; and so the classification by the jury, either of the duty or of the omission, would be of no moment or materiality. After the court

has classed a thing as duty, how could the jury fail to class it as diligence, and its omission as want of diligence?

The precise thing which every man is bound to do before stepping upon a railroad track, is that which every prudent man would do under similar circumstances. If prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means. The court cannot instruct the jury what a prudent man would do, for in legal contemplation, the jury know it better than the court. If instructions on that subject had to be given, the jury would be the instructors and the court the instructed, that is, the jury would charge the judge on that part of the case, rather than receive a charge from him. It is not for the court to teach the jury the ways of the prudent man, but to warn them of the duty on the part of all others to make their ways like his. The court cannot point out to the jury specifically the ways of the prudent, the law supposing those ways better known to the jury than to the judge. It is not incumbent upon the court to instruct the jury that it is the duty of one who attempts or intends to cross a railroad track to use his senses of hearing and seeing before stepping on the track.

4. In the course of his very able, excellent and perspicuous charge, the judge instructed the jury that ordinary care was synonymous with, or meant about the same thing as common prudence, and this is complained of in the motion for a new trial. Ordinary care is that care which every prudent man observes; and to describe it as synonymous with, or about equivalent to common prudence, is not misleading, especially when this exposition is applied alike to the conduct of both parties, and it was so applied in this case. The railroad company got the benefit of it, because the jury were told that if the railroad company had observed ordinary care, ordinary and reasonable care in the sense of common prudence, the company was not liable for this injury. On the other hand, it was stated

that if the deceased observed the like care, the company, if negligent, would not be excused from the consequences of its negligence.    In one aspect, it looks as if this is too free a translation of the phrase, "ordinary care," but accepting the word "common," in its ordinary meaning, it is about equivalent to "ordinary," and lexicographers, I believe, so pronounce.    And usually words are to be taken in their ordinary signification.    Code, §4.

5.  Several other requests to charge were refused, but in looking at the charge as given, we find that it substantially, and in apt terms, covers all of the requests that are material, and that announce sound law.    For that reason, the failure to give them is no cause for a new trial.

6.  The facts of the case are very numerous, and somewhat complicated.    The witnesses were in conflict, especially about the speed of the train, and some other material fact.    The general impression produced upon the mind by reading the whole evidence, consisting of some two hundred pages in print, is that in all probability this railroad company observed due diligence; in all probability, but it is not certain; and there is evidence to warrant the jury in finding as they did.

To reach their finding they had to run over and set aside a great deal that was stated by witnesses, but we cannot absolutely pronounce, as a legal judgment, that they violated their duty in so doing.    Cut away a considerable portion of the defendant's evidence, or all of it, and there is ample to found the verdict on; cut away the plaintiff's evidence relating to diligence, and there is ample left for successful defence.    But when the two are combined and fused together, different minds would probably differ, touching the effect of it as a whole.    Its effect upon my own mind is that the company was probably not at fault; but this is a mere perhaps.    The jury have found to the contrary, and the court below, who was near to them, nearer to the case than we are, upheld their finding; and because we are constrained by the law (for all the members of the

court share in the doubt) we affirm the judgment. As matter of stern legal duty, this court yields its strong doubts of the correctness of the verdict.

Judgment affirmed.