## COMER *et al.*, receivers, *v.* SHAW.

1. The provisions of section 708 of the code have no application except to crossings where a public road established pursuant to law crosses the track of a railroad, and consequently the statutory duties of blowing the whistle of the locomotive and checking the speed of the train are not incumbent upon an engineer when approaching the intersection with a railroad of a road which, though to a greater or less extent used by the public, has never been established as a public road in the manner pointed out by law. It follows, that no one has a right to assume that in approaching a crossing of the kind last indicated an engineer will observe these statutory requirements, and that the omission to do so is not, in law, negligence *per se.*

2. Applying what is said above to the evidence in the present case, the verdict for the plaintiff cannot be lawfully upheld, it appearing from the undisputed facts that by the exercise of ordinary care the plaintiff's husband, for whose homicide the action was brought, could have avoided the collision which resulted in his death.

3. It is unnecessary to deal with many of the questions presented by the motion for a new trial and the bill of exceptions, because upon the substantial merits of the case the only proper result would have been a verdict for the defendants.

June 8, 1896. By two Justices. Argued at the last term.

Action for damages. Before Judge Butt. Muscogee superior court. May term, 1895.

*McNeill & Levy,* for plaintiffs in error.
*Sanford & Son* and *Wimbish & Worrill,* contra.

SIMMONS, Chief Justice.

This was an action against the receivers of a railroad company to recover for the homicide of the plaintiff's husband, who was run over by a train operated by the defendants, while he was attempting to cross the track of the railroad. The collision occurred about a mile from the city of Columbus at a place where the railroad was crossed by a road which was used to a considerable extent by the public, but which was not a public road established in the mode prescribed by law. This being so, the provisions of section

708 of the code, touching the checking of the speed of trains and the giving of signals, were not applicable. Code, §706; *Ga. R. Co.* v. *Cox*, 61 *Ga.* 455. Where a railroad crossing is in a populous locality and is much used by the public, even though the provisions of this section are not applicable, greater care is required of railroad companies with respect to speed and signals than is to be expected at places where the railroad is crossed by unfrequented country roads not established by law as public roads; but non-compliance at such a place with the statutory requirements applicable to public roads established by law is not, as a matter of law, negligence *per se*. It is generally for the jury to say whether under such circumstances the railroad company was negligent or not. 4 Am. & Eng. Enc. Law, Art. Crossings, 915; 2 Jaggard, Torts, 892, and cases cited; Elliott, Roads and Streets, 607, 608.

This distinction is also to be taken into consideration when we come to consider the conduct of persons attempting to cross the railroad at such places. Where the crossing is one to which the statutory requirements above referred to are applicable, a person about to cross has a right to expect that the railroad company, in the running of its trains, will comply with these requirements; and his reliance upon the discharge of its duty in the premises may in some degree excuse a want of full diligence on his part in looking out for the approach of a train. Where, however, the statute is not applicable, a person about to cross must assume a greater burden of care than he would be required to assume if the crossing were one to which the statute applied.

Under the circumstances disclosed by the evidence in this case, we think the deceased was clearly wanting in ordinary care for his own safety. It appears that the train was running about a regular schedule, and that on the occasion in question it was approaching the crossing on schedule time and at the usual rate of speed; and that this schedule had

been in operation continuously for several months. The deceased was a resident of the neighborhood, and in the habit of crossing the railroad at that point daily, and was frequently there when this train was passing. He ought therefore to have known when he started to go across that the train was likely to be approaching, and before driving his wagon upon the track, ought to have looked to see if the train was near. Had he looked he could have seen it in ample time to have avoided the collision. He had to pass over one set of tracks before reaching that upon which the train was approaching, and after he had driven upon the first set of tracks and before going upon the other, could have seen the train for a considerable distance. He did not look in that direction, however, until after his mule was on the track upon which the train was approaching; and then, after looking towards the train, he whipped up his mule and continued on his way across, but was struck by the locomotive before he could get across. None of the defendants' employees on the train saw him until it was too late to stop the train in time to avoid running into him. It does not appear that there was anything to divert his attention from the approaching train when he was attempting to cross.

Under this state of facts we think it is clear that whether the defendant was negligent or not in respect to speed or signals before the deceased was discovered upon the track, the deceased was himself so far wanting in ordinary care as to render a verdict in favor of the plaintiff improper. It is unnecessary to deal specifically with the numerous grounds of the motion for a new trial, since the only proper result of the case would have been a verdict for the defendants.    *Judgment reversed.*