30212.   POWELL *et al.,* receivers *v.* SMITH.

Decided March 11, 1944.

*Z. B. Rogers, John B. Gamble,* for plaintiffs in error.

*Robert M. Heard, J. T. Sisk,* contra.

MacIntyre, J. This was a suit brought by Mrs. Dewitt T. Smith against L. R. Powell Jr. and Henry W. Anderson, as receivers of the Seaboard Air Line Railway Company. She alleged in her petition that in 1942 her husband, Dewitt T. Smith, while attempting to drive a pick-up truck across the railroad tracks at a private crossing, was struck and killed by a train operated by the defendants; that said private crossing was on a "private road or way that had been in constant and uninterrupted use by the people in its neighborhood, as a private road, for more than twenty years; that it had been so recognized by the railroad company and the defendants, and was maintained by them at the point of its intersection with said railway tracks." It was further alleged: "That on said occasion, and prior to the homicide of the said Dewitt T. Smith, he had been to the aforesaid house of Snooks Martin to deliver a pig; that after delivering said pig, the said Dewitt T. Smith, who was seated on the left-hand side of the seat of said truck, drove said truck along the road leading from said house to

the public road, on the opposite side of the said railroad tracks; that immediately after leaving the yard of said house, the said private road runs south and parallel with said railroad tracks for a distance of about — feet, where it makes a sharp bend to the right and up a sharp incline to cross said railroad tracks; that the said Dewitt T. Smith, in driving his said truck along said private road, had his back to the north, the direction from which the train which caused his death was approaching said crossing; that the said automotive truck had an enclosed cab on it with a rear-view glass just above the back of the seat; that said private road, after leaving the yard of the aforesaid house, goes sharply down grade, until it reaches the point where it curves to the right to cross said tracks; that at the point where said private road begins to curve to cross said tracks, there is located a small bridge over a drain-ditch; that immediately in front of the aforesaid house, said railway tracks pass through a cut, and that the aforesaid house is located on a rise which prevents any person travelling said road from being able to see the aforesaid railway tracks to the north, until the curve in said private road near the railroad tracks is reached; that said house is geographically located on the south side of said railway tracks, but, in railway parlance, [it is located] on the east side of said railway tracks; that said railway tracks at the aforesaid point run approximately east and west, but, in railway parlance, [they] run north and south, therefore, said house and rise are located on the left-hand side of said railway tracks, coming from Middleton toward Elberton, Georgia; that the agents, servants, and employees of the defendants in charge of and operating the locomotive pulling said train had an unobstructed view of the said Dewitt T. Smith and the automotive truck he was driving for approximately one-fourth of a mile before reaching the point of contact with said truck, and in the exercise of ordinary care and diligence, should have seen him and said truck in ample time, by the exercise of ordinary care and diligence, to have avoided the collision with said truck and the homicide of the said Dewitt T. Smith; that the agents, servants, and employees of the defendants in charge of said locomotive engine drawing said train had a much better opportunity to see the said Dewitt T. Smith approaching or upon said crossing than the said Dewitt T. Smith had of seeing the approach of said train to said crossing, for the reason that said agents, serv-

ants, and employees of defendants were in an elevated position in the cab of said engine, and had a much more extended view of said crossing, of said road, and of the said Dewitt T. Smith and his truck, than the said Dewitt T. Smith had of said railway tracks and any locomotive and train that might be approaching same; that the agents, servants, and employees of the defendants operating and in charge of said locomotive had much better opportunity to observe the said Dewitt T. Smith and said automotive truck approaching said crossing than the said Dewitt T. Smith had of said railway tracks and of the approach of said locomotive and train, for the reason that the said locomotive and train was travelling in the same direction as the said Dewitt T. Smith, while the said Dewitt T. Smith was seated in the closed cab of said truck with his back toward said locomotive and train and with only the rear glass of said cab through which to observe the approach of said locomotive and train, and for the further reason that the said Dewitt T. Smith could only observe the approach of any locomotive or train travelling south on said tracks by stopping said automotive truck, as he could not look backward through the rear glass in the cab of said truck and at the same time propel said truck with any degree of safety. That the top of said cab of said truck was some eighteen inches higher than the rear glass in the cab of said truck and was necessarily visible to the agents, servants, and employees of the defendants in charge of said locomotive engine which struck said automotive truck; whereas said locomotive engine was not visible to the said Dewitt T. Smith, looking backward through the rear glass in the cab of said automotive truck and while said automotive truck was proceeding southward and parallel with said railway tracks, and in a depression between the hill to the north and said railway crossing to the south; that the agents, servants, and employees of the defendants in charge of and operating the aforesaid locomotive and train, in the exercise of ordinary care and diligence, should have seen the said Dewitt T. Smith and said truck approaching said crossing, and negligently, as hereinbefore and hereinafter set forth in other paragraphs of the original petition, failed to warn the said Dewitt T. Smith of the approach of said locomotive and train to said crossing, and negligently failed to operate said locomotive and train and have same under such control and in such a manner as to avoid injuring or

killing the said Dewitt T. Smith, or coming into contact with the said Dewitt T. Smith and his said automotive truck at said crossing, or any other person or persons who might have been entering upon the crossing, and negligently failed to reduce the speed of said train as it approached said crossing, and to have the same under such control that they might, in the exercise of ordinary care and diligence, have been able to stop said locomotive and train in time to avoid a collision with the said Dewitt T. Smith and his said truck and injuring or killing the said Dewitt T. Smith; that the agents, servants, and employees of the defendants then and there operating said locomotive and train negligently failed to keep a constant and vigilant lookout ahead of said locomotive and in anticipation of the presence of persons near or upon said crossing, and in order to avoid injuring or killing the said Dewitt T. Smith or any other person who might be near or upon said crossing." The defendants demurred both generally and specially; the demurrer was overruled; the case proceeded to trial, terminating in a verdict for the plaintiff; and the court on a motion for new trial refused to set aside the verdict.

■ The demurrer was both general and special. The grounds of special demurrer, which attacked the petition for indefiniteness and inconsistency, and on the ground that certain allegations were conclusions of the pleader, without evidentiary facts to support such conclusions, were properly overruled, after the petition had been amended.

"The measure of diligence due . . by a railroad company to any person is a relative one, and what is or is not due diligence must be arrived at in every case with reference to the surrounding circumstances and the relations which, for the time being, the company and the person in question occupied toward each other." *Crawford* v. *Southern Ry. Co.*, 106 Ga. 870, 875 (33 S. E. 826). "Generally the servants of a railway company are not bound to anticipate the presence of a trespasser upon or about its tracks, and the duty of exercising such care and diligence does not in such case arise until the presence of the trespasser becomes known." *Tice* v. *Central of Georgia Ry. Co.*, 25 Ga. App. 346 (1-*b*) (103 S. E. 262). In *Crawford* v. *Southern Ry. Co.*, 106 Ga. 873, 874 (supra), Mr. Justice Fish, speaking for the court, states more specifically that this rule as to the measure of diligence owed by a railroad

company to a trespasser, has two phases: [1] "Taking the locality where the train is running and all the surrounding circumstances, if those in control of the movement of the train have no reason to apprehend that there may likely be a human being on the track in front of the engine, they are under no duty to one who may in fact be there, until they have actually discovered that he is there. [2] But if, from the locality or surrounding circumstances, there is reason to apprehend that the track in front of the locomotive may not be clear of human beings, then, it seems to us, it is the duty of the employees of the company to keep a lookout ahead of the train; most assuredly so unless they are performing some duty which prevents their looking out upon the track in the direction in which the train is moving." However, in *Helton* v. *Western & Atlantic Ry. Co.*, 67 *Ga. App.* 23, 25 (19 S. E. 2d, 312), it is said: "Under the allegations of the petition as amended, the plaintiff's son was not a trespasser on the railroad track at the crossing. Since the crossing, whether or not it was a public crossing, had been maintained by the railroad and it had been the custom for about twenty years for people to cross the railroad at this crossing, which custom was known to the servants of the railroad in the operation of its trains, a jury would be authorized to find under the circumstances that it was the duty of the operators of the train to anticipate that persons might be crossing over the crossing at the time, and to use such precaution to prevent injury as ordinary care under the circumstances would require." See, in this connection, *Lassiter* v. *Atlanta & West Point R. Co.*, 61 *Ga. App.* 23, 24 (5 S. E. 2d, 603). The petition in the instant case, as it relates to the private crossing in question, alleges: "That the private road or way had been in constant and uninterrupted use by the people in its neighborhood as a private road for more than twenty years; that it had been so recognized by the railroad company and the defendants, and was maintained by them at the point of its intersection with said railway tracks." Thus, in the instant case, where a private way crosses the track of a railroad company, and the crossing is maintained by the company and such private way for more than twenty years has been in constant and uninterrupted use by the people of the neighborhood, it is a question for the jury to say whether in the exercise of ordinary care the servants in charge of a train should anticipate that persons

may be on the track at this point, and take such precautions to prevent injury to such persons as would meet the requirement of ordinary care and diligence. *Louisville & Nashville R. Co.* v. *Arp,* 136 *Ga.* 489 (2) (71 S. E. 867); *Comer* v. *Shaw,* 98 *Ga.* 543, 544 (25 S. E. 733); *Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1 (165 S. E. 37); *Wise* v. *Atlanta & West Point R. Co.,* 61 *Ga. App.* 372, 376 (6 S. E. 2d, 135). But the imposition of such a duty on the part of the defendant railroad company would not relieve the plaintiff in going upon the tracks at the crossing, from exercising ordinary care for his own safety. *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (2) (154 S. E. 718). Applying the above rules to the petition, it sets out a cause of action.

■ The following parts of paragraph 17 of the answer were stricken on demurrer, for the reason that the contents of these parts of the paragraph fail to set forth a legal defense: "(b) Defendants aver, that in order to avoid the responsibility of injuries to persons on private crossings, under said charged act of negligence, will require the locomotive engineer of a train to reduce the speed of said train, so as to stop the same should any person be upon any crossing. (c) Defendants further aver that they are engaged in the operation of interstate trains, and that the train in the instant case was then engaged in the operation of interstate movement out of, and through, and in the States of Virginia, North and South Carolina, Georgia, and Alabama; that it was a freight train consisting of engine, eight cars, and caboose, and that it was proceeding at the time of said collision on its run from Abbeville, S. C., and had left Abbeville and headed to Howell's Yard, Atlanta, Georgia; that it had crossed the Savannah River, the dividing line between Georgia and South Carolina, a distance of 123 miles; that between the Savannah River and Howell's Yard, Atlanta, Georgia, there are 162 public-highway crossings at grade, and that there are — number of private-vehicle crossings between the Savannah River at the State line, between South Carolina and Georgia, to Howell's Yard, Atlanta, Georgia; that all of defendant's trains, passenger and freight, operate over and across said public and private - vehicle crossings; that the slackening and checking of a freight train in approaching said crossing or crossings will necessitate the loss of five minutes; that to stop said freight train at said crossing or crossings will cause a loss of ten

minutes; that its schedule maximum running time is 40 miles per hour, and that the mere slackening or slowing down would increase its running time [of] 30 hours between Abbeville, S. C. and Howell's Yard, Atlanta, Georgia, to 50 hours; and that if there should be persons upon the intervening crossing, and defendant's agents, servants, and employees were required to check and slacken the speed of said trains and stop before reaching said crossing as alleged and charged by plaintiff, it would be impossible to regain its maximum schedule speed. (d) For further plea and answer defendants say: That in order for a train to be prepared to stop at any crossing the speed of such train must be reduced to not more than-five or six miles per hour when it is within 50 to 100 feet of said crossing. Defendants show that while to comply with said charged act of negligence and claimed rule of law would not only cause it to lose the time that would be consumed in reducing speed in approaching said crossing and the time that would be consumed in resuming its usual speed for the operation of its trains after passing said crossing, but said crossings are so numerous and so spaced over the line of the Seaboard Air Line Railway, that the defendant's trains could never attain a speed greater than 8 to 10 miles per hour, or its normal average schedule running speed of 35 to 40 miles per hour. (e) . . . Defendants further show that the train that is charged to have collided with the truck and caused the death of the deceased, Dewitt Smith, was, at the time of said alleged occurrence, being operated in interstate commerce, and the movement of interstate freight from out of the State of Georgia into the State of Georgia. (f) That said charged acts of negligence in not checking the speed of the train in approaching the crossing and not stopping the train before reaching the crossing, inferentially, as well as directly, charged a failure on the part of the defendant to comply with what was formerly known as the 'Blow-Post Law' of the State of Georgia, embodied in §§ 2675, 2676, and 2677, of the Civil Code of Georgia of 1910, which were declared unconstitutional by the Supreme Court of the United States in the case of Seaboard Air Line Railway Co. v. Blackwell, 244 U. S. 310 (37 Sup. Ct. 640, 61 L. ed. 1160), and repealed by § 6 of the act of the General Assembly of Georgia of 1918 (Acts 1918, p. 214); and therefore the said charged acts of negligence, as to the checking of the speed and stopping the train, do not con-

stitute acts of negligence creating liability on the part of these defendants to petitioner; that if these and other similar charged acts of negligence are to be held as constituting actionable negligence in fact or in law—common, statutory, or by judicial construction—it will be an unreasonable burden and regulation imposed upon interstate railroad carriers and an unreasonable burden and regulation upon these defendants in the operation of their interstate trains, and will be an unreasonable interference with the due movement of interstate traffic, which will seriously interfere with interstate commerce, and that to so impose such burdens upon the operation of this and other interstate trains would be an undue and unreasonable regulation of interstate commerce, and in violation of art. 1, sec. 8, par. 3 of the constitution of the United States, which declares: 'The Congress shall have power . . . (3) to regulate commerce with foreign nations and among the several states, and with the Indian tribes:' therefore, said charged acts of negligence are without force and effect, and are not applicable to these defendants in the operation of its said interstate train alleged to have caused the death of said deceased, and the defendants are not, and were not, guilty of any negligence as so alleged, creating liability on the part of these defendants to the plaintiff herein." . . .

The Civil Code of 1910, § 2675, provided: "There must be fixed on the line of said roads, and at the distance of four hundred yards from the center of each of such road crossings, and on each side thereof, a post, and the engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road." In Seaboard Air Line Railway v. Blackwell, supra, the facts charged were: "That the deceased was driving a horse along a public road in the county of Elbert and while crossing the railroad track of the railway company at a public crossing outside of the city of Elberton he was struck by the engine of one of the company's passenger trains and received injuries from which he died three days later; that the employees of the company in charge of the train failed to blow the engine whistle at the blow-post 400 yards south of the crossing, failed to keep blowing it until the train arrived at the crossing, and failed to check the speed of the

train at such blow-post and keep it checked until the train reached the crossing, and, so failing, the company was guilty of negligence; that the employees of the company failed to keep the train under control and approached the crossing at a high rate of speed, so that they could not stop the same in time to save the life of the deceased, and that such conduct was negligence; and that 'such conduct was negligence if they saw said deceased on the crossing, and it was negligence under the blow-post law, and it was negligence regardless of the blow-post law.'" The court held: "That provision of the 'Blow-Post' law of Georgia (Civil Code, 1910, §§ 2675-2677), which requires railroad companies to check the speed of trains before public road crossings so that trains may be stopped in time should any person or thing be crossing the track there, is a direct and unconstitutional interference with interstate commerce as applied to the state of facts specifically pleaded by the defendant interstate carrier in this case, whereby it appears that, to comply with the requirement, the interstate train in question would have been obliged to come practically to a stop at each of 124 ordinary grade crossings within a distance of 123 miles in Georgia extending from Atlanta to the South Carolina line, and that more than six hours would thus have been added to the schedule time of four hours and thirty minutes;" and "that the statute is a direct burden on interstate commerce and being such is unlawful." Seaboard Air Line Railway v. Blackwell, was decided on June 4, 1917. The act approved August 19, 1918 (Ga. L. 1918, p. 212), relating to public crossings only repealed that provision of the blow-post law that was declared unconstitutional by the United States Supreme Court. The act of 1918 requires only the blowing of "two long and two short blasts at intervals of five seconds between each blast, said blasts to be loud and distinct;" and is otherwise less stringent in that it requires only that the engineer "keep and maintain a constant and vigilant lookout along the track ahead of said engine, and shall otherwise exercise due care in approaching said [public] crossing, in order to avoid doing injury to any person or property which may be on said crossing," instead of requiring the engineer, when he arrives at the blow-post, to check the speed of the engine so as to stop in time should any person or thing be crossing said track on said railroad.

The petition in the instant case as amended shows clearly that

the suit was not brought for damages arising out of the failure of the railway company to comply with the requirements of the act of 1918, supra (Code, § 94-506), and of course no attempt is made to proceed under the former statute which was embodied in the Civil Code of 1910, § 2675, and declared unconstitutional in part by the Supreme Court of the United States in the Blackwell case, and repealed by the act of 1918. Neither is the plaintiff contending that the defendant violated any duty relating to speed imposed by statute, for he alleges that the defendant was negligent in failing to have the engine under control and to check the speed of the train upon approaching the private crossing, under the surrounding facts and circumstances as they existed at the time the deceased was killed at the private crossing, and that said acts constitute simple negligence as a matter of fact. It is the law in torts that if any person, natural or artificial, owes a duty, and breaches that duty, and if the breach of that duty, imposed by statute or otherwise, is the proximate cause of an injury and results in damage, the person who breached such duty is guilty of actionable negligence. Before the act (codified as section 2675 of the Civil Code of 1910, and since repealed) was passed, and since the passage of the act of 1918, which is now in force (Code, § 94-506), the Supreme Court of Georgia held: "The proprietors of railroads, when running their engines over crossings, must use reasonable care and diligence, taking into consideration all the circumstances of the case; and whether there has been negligence or not, depends upon the facts of each particular case, and the question is to be decided by the Jury." *Macon & Western Railroad Company* v. *Davis,* 18 *Ga.* 679, 680 (5). It is upon this principle of the law of torts, which is now of force in this State, that the plaintiff relies. He is not seeking recovery for a violation of any duty imposed by a statute relating to speed of the train, but for a violation of the general duty to exercise ordinary care imposed by the law of the State upon its citizens generally. *Seaboard Air Line Ry. Co.* v. *Benton,* 43 *Ga. App.* 495, 499 (159 S. E. 717).

Since the decision of the Supreme Court of the United States in the Blackwell case, it has been held by the Supreme Court of Georgia: "Where persons habitually with the knowledge and without the disapproval of the railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given

point, the employees of the company in charge of one of its trains, who are aware of the custom, are bound, on a given occasion, to anticipate that persons may be upon the tracks at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence." *Western & Atlantic R. Co.* v. *Michael,* supra. The Court of Appeals has said that, "Where a private way crosses the track of a railroad company, and the crossing is maintained by the company, and has for a number of years been in constant and uninterrupted use by the people of the community, a jury may be authorized to find that the servants in charge of a train should anticipate that a person may be on the track at such point, and use such precaution to prevent injury to him as would meet the requirements of ordinary care. *Louisville & Nashville R. Co.* v. *Arp.* [supra]. But the imposition of such a duty on the part of the servants of the railroad company would not relieve a person going upon the tracks at the crossing from the duty of exercising ordinary care for his own safety. *Atlantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812 (5) (127 S. E. 274), s. c. 33 *Ga. App.* 631 (3) (127 S. E. 812) ; *Leverett* v. *Louisville & Nashville R. Co.,* 38 *Ga. App.* 155 (142 S. E. 905). . . While it has been held that there is no statutory duty resting upon a railroad company to give warning of the approach of a train to a private crossing (*McCoy* v. *Central of Ga. Ry. Co.,* 131 *Ga.* 378, 62 S. E. 297 ; *Willingham* v. *Macon & Birmingham Ry. Co.,* 113 *Ga.* 374, 38 S. E. 843), a petition is not subject to special demurrer because it alleges negligence on the part of the defendant company in failing to give any signal by bell, whistle, or otherwise, and in failing to have the engine under control and to check the speed of the train upon approaching a private crossing, where, as in the instant case, such facts were not set forth as constituting a violation of any statutory duty of the defendant, but as constituting negligence as a matter of fact, under the surrounding facts and circumstances set forth." *Southern Ry. Co.* v. *Slaton,* supra. It has also been held by this court that, "A jury would be authorized to find that it would be negligence on the part of the defendant, through its servants in the operation of its train, and a failure on their part to exercise ordinary care under the circumstances, to approach the crossing at the rate of speed of seventy miles an hour without blowing the

whistle or ringing the bell. One of the circumstances being that a person at the crossing, by reason of the curve in the track and the obstruction of the view of the approaching train by an embankment, could not see the approaching train." *Helton* v. *Western & Atlantic R.*, supra. And since the decision in the Blackwell case, the Court of Appeals has again held: "The only allegations of negligence left in the petition which were not subject to demurrer were those as to the failure of the engineer to give any signal of the approach of the train and to reduce the speed of the train so as to be able to prevent injuries to persons who might be on the crossing. A failure to blow the whistle or ring the bell on the train approaching the private crossing was not negligence per se, as it might have been had the crossing been a public crossing. In *W. & A. R. Co.* v. *Meigs*, 74 *Ga.* 857, 865, it was said: 'Railroad engineers should observe more caution in running at places where they know persons are likely to be on the track than elsewhere, even if those persons are trespassers, and especially is this true when the company has at least tacitly consented to this otherwise unauthorized use of its property by the public.' Whether such failure on the part of the defendant to blow its whistle or ring its bell or check the speed of its train amounted to ordinary negligence is a matter which can be solved alone by the jury. As was said in *Bullard* v. *Southern Ry. Co.*, 116 *Ga.* 644 (43 S. E. 39), 'It was for the jury, and not for the court, to say what was the measure of its duty under all the circumstances of the case.' " *Wise* v. *Atlanta & W..P. R. Co.*, supra.

In the Blackwell case, the effect of the Georgia statute there referred to was to require the train of the railroad company not only to be under control under a given state of facts and circumstances, but to require the train to come practically to a stop at all crossings under any and all circumstances, whereas in the instant case, under the law of torts which is to be applied, unaffected by any statute relating to the duty of the agents of the railroad company to slacken the speed of the train at the private crossing where the injury occurred, it is only required to slacken the speed or stop if the exercise of ordinary care so requires. Under the law of torts which should be applied here (the general duty to exercise ordinary care), the jury is to say whether a failure on the part of the railroad company to blow its whistle, ring its bell, or check the

speed of the train approaching the private crossing, under the particular facts and circumstances, was actionable negligence as a matter of fact, there being no statutory duty so to act. In the instant case, no statutory requirement, either State or Federal, to blow the whistle, etc., or check the speed of the train, is involved. And we can not say that the facts and circumstances here alleged, which constitute actionable negligence under the interpretations of both the Supreme Court and the Court of Appeals, are as substantial and hurtful to interstate commerce as the burden imposed by the statute referred to in the Blackwell case. We do not think it can be said "that the general duty to exercise ordinary care, imposed by the law of the State upon its citizens generally, constitutes an unreasonable burden upon interstate commerce because persons engaged in interstate commerce incidentally come within the purview of such general laws." *Seaboard Air Line Ry. Co.* v. *Benton,* supra. To say otherwise, and in order to declare that the facts specified in the part of the answer here demurred to, if proved, would be a direct burden on interstate commerce, we would at least be forced to assume that the surrounding facts and circumstances at all the private crossings on the line of track of this railroad between Atlanta, Georgia, and the South Carolina line, or a sufficient number of those specified in the defendant's answer, presented, relative to the duty of slackening the speed of the train, the equivalence of the particular or surrounding facts and circumstances on the occasion when the deceased was killed at the particular private crossing in question. This we can not do, for it would be an unreasonable assumption. We can not say that, under the surrounding facts and circumstances here pleaded, it was beyond the power of the State to require the defendant to comply with the general duty to exercise ordinary care, which the law of the State imposes generally upon its other citizens. Therefore we think that when the defendant undertakes, among other defenses, to set up in his answer facts and circumstances which he claims authorized a conclusion which we think is based upon such an assumption, the court did not err in striking on demurrer such a defense from his answer and in thereafter refusing to allow evidence to support the allegations of the answer so stricken.

That part of the decision, rendered on rehearing, in *Atlanta & West Point R. Co.* v. *Hemmings,* supra, with the exception of that

768

paragraph dealing with special ground 7 of the motion for new trial, which is out of harmony with what has just been stated, and with former decisions of this court and the Supreme Court, therefore must yield to those cases. Furthermore, the *Hemmings* case, supra, is not a controlling precedent, for it was not concurred in by all the judges who constituted the division deciding it, and, after further consideration, that part of the decision, above stated, is disapproved and will not be followed.

■ As to ground 4 of the motion for new trial, having sustained the trial court in overruling the demurrers to the petition, we hold that the evidence excepted to in this ground, being relevant to facts alleged, was properly allowed over objections urged. A trial judge can state his reasons for admitting or refusing to admit evidence, if such reasons are pertinent to objections to the evidence and the rulings made thereon, and this statement does not constitute such an expression of an opinion as is violative of section 3-606 of the Code. *Jones* v. *Pope*, 7 *Ga. App.* 538 (67 S. E. 280). The remarks of the judge, which were excepted to, came within the above rule and were not reversible error.

■ The rejection of the testimony tendered in support of the defense stricken on the demurrer to the answer, excepted to in ground 5, was not error.

■ The exceptions to the charge are not meritorious.

■ After a careful consideration of the voluminous brief of evidence, we think that the jury were authorized to find the defendant guilty of simple negligence, and that the verdict was authorized.

*Judgment affirmed. Gardner, J., concurs. Broyles, C. J., dissents.*