31347. CALLAWAY, trustee, *v.* COX.

556

DECIDED NOVEMBER 7, 1946. REHEARING DENIED DECEMBER 4, 1946.

*Beck, Goodrich & Beck, Allen Kemper,* for plaintiff in error.

*O. J. Coogler, John I. Kelley, H. H. Hamrick,* contra.

FELTON, J. The railroad contends that there was no evidence of its negligence, and that the deceased was guilty of

negligence which would bar a recovery. Under the pleadings in the case, undemurred to, alleging several acts of negligence, we can not agree with these contentions. The jury was authorized to find that the private crossing involved was kept up and maintained as a crossing by the railroad for the use of the public. *Western & Atlantic R. Co. v. Reed*, 35 *Ga. App.* 538 (134 S. E. 2d, 134); *Southern Ry. Co. v. Slaton*, 41 *Ga. App.* 759 (154 S. E. 718); *Louisville & Nashville R. Co. v. Arp*, 136 *Ga.* 489 (71 S. E. 867); *Powell v. Smith*, 70 *Ga. App.* 754 (29 S. E. 2d, 521). The evidence at least authorized a finding by the jury that no signal by bell or otherwise was given upon the approach of the train to the crossing, as is shown in division 1(b).

The trustee also contends that the deceased was guilty of negligence barring a recovery, by going down the highway on a road parallel to the railroad tracks, and turning to the right into the cross-road in the path of the oncoming train, for the reason that if he had looked he could have seen the train approaching. It has been held many times that this court can not say as a matter of law that the failure on the part of a person approaching a railroad crossing, and unaware of the approach of a train, to stop, look, or listen, makes him guilty of a lack of ordinary care, such as would prevent a recovery in an action for ordinary negligence. *Collier v. Pollard*, 60 *Ga. App.* 105 (2 S. E. 2d, 821); *Bryson v. Southern Ry. Co.*, 3 *Ga. App.* 407 (59 S. E. 1124); *Williams v. Southern Ry. Co.*, 126 *Ga.* 710 (55 S. E. 948); *Richmond & Danville R. Co. v. Howard*, 79 *Ga.* 44 (3 S. E. 426). It is urged by the railroad that the ruling in *Comer v. Shaw*, 98 *Ga.* 543 (25 S. E. 733), controls. With this contention we can not agree because in the *Comer* case it affirmatively appears that the person crossing the track did not look for a train until the mule was on the track. In this case, it does not appear what the deceased did or did not do as a matter of precaution. In this connection, see *Southern Ry. Co. v. Slaton*, 41 *Ga. App.* 759 (154 S. E. 718).

The trustee of the railroad contends that the testimony of D. S. Shirley, which was negative testimony, was an insufficient basis for the jury's finding that the bell of the engine was not rung, and that the jury was bound to accept the positive testimony of the engineer and fireman that the bell was rung. As to this, the vital point is whether the bell was rung as a warning of the approach

of the train to the crossing. Mr. Shirley testified: "I was sitting on my front porch. I live about 150 feet from the railroad. I live in sight of the railroad. I didn't see the collision, but I heard it when it struck the car and it hung on the front of the train on the railroad just past my house. . . I know the crossing he was on. I would say that it is a distance from where I live of about 300 or 350 yards. I was in clear view of the crossing. I could have seen the collision if I had been looking. I didn't hear any signal given on that occasion. I never heard a bell ringing. I was where I could have heard it and I generally hear it. . . As the train passed there and I saw the automobile, I recognized it as Mr. Cox's automobile. I would say that the train was making a speed of between 55 and 60 miles per hour when it went by there. The train went about one-half mile before it stopped. . . The first thing that attracted my attention was the noise from the crash. When I saw it I knew that it was Mr. Cox. I went up to where the train was stopped. The door was knocked off and the car and the man were on the cow-catchers." The engineer testified: "I did not blow for the crossing. . . After they removed the body we had to back up to the crossing to get loose from the automobile and roll it back. The bell was ringing at that time. The bell rings by an automatic bell ringer. We turned on the automatic bell ringer coming into Jonesboro. We did not shut it off after that. It is customary to ring the bell all the way from Jonesboro to Atlanta. That is what I did. The bell was ringing as I approached the crossing. When I came to a stop, I shut it off." The fireman testified: "When the engineer approached Morrow that day, the bell was ringing by the automatic ringer. The engineer turned it on at Jonesboro that day, and the bell was ringing at the time of the collision." Morrow is between Jonesboro and Atlanta. While Mr. Shirley's attention was not directed to the crossing at the time of the collision, the collision attracted his attention and under the circumstances the jury was authorized to find: that his attention was sufficiently directed to the train, dragging the automobile which he knew was the deceased's, and that he was in a position to hear the bell ringing; and to find that, if the bell was not ringing at the time Mr. Shirley's attention was called to the train, it was not ringing as the train approached the crossing, as the engineer and fireman testified it was, as shown above.

Under the testimony, the bell was rung from Jonesboro till the train stopped after the collision or not at all.

■ This court can not say as a matter of law that the verdict was excessive. The jury was authorized to find that the deceased was approximately 38 years of age, able-bodied, and before his death was earning approximately $200 per month and had an expectancy of 28.96 years.

■ It was not error to overrule the motion for new trial, based upon the ground of newly discovered evidence, where the affidavits in support of the witnesses upon whose newly discovered evidence a new trial is sought fail to give the names of the associates of the witnesses. Code, § 70-205; *Carpenter* v. *State, 35 Ga. App.* 349 (133 S. E. 350); *Hart* v. *State, 36 Ga. App.* 673 (137 S. E. 798); *Moore* v. *State, 55 Ga. App.* 157 (189 S. E. 551); *Lashley* v. *State, 54 Ga. App.* 425 (188 S. E. 43); *Ivey* v. *State, 154 Ga.* 63 (113 S. E. 175).

■ The plaintiff proved a ceremonial marriage to the deceased. This raised the presumption that all other marriages between the deceased and others had been dissolved by death or divorce, and the burden was on the trustee to overcome it by proof. *Nash* v. *Nash, 198 Ga.* 527 (2) (32 S. E. 2d, 379); *Brown* v. *Parks, 173 Ga.* 228 (160 S. E. 238); *Brown* v. *Hogan, 72 Ga. App.* 691 (34 S. E. 2d, 619). The evidence of the trustee showed that the deceased was married to another prior to his marriage to the plaintiff. The former marriage was by a justice of the peace, and it did not appear that a marriage license had been issued. The first wife testified by deposition: "I did not sue Mr. Cox for a divorce. We were never divorced. I did not hear from Mr. Cox, except that I heard he was married in Alabama; of course, that was just hearsay." The only way by which the witness could know of her own knowledge that the deceased had not sued her for a divorce, under circumstances under which she had no notice as provided by law, was to examine the court records in the places of residence of the deceased. The only reasonable interpretation of the witness's testimony is that she had not heard from the deceased either directly or indirectly otherwise than to hear that he married again in Alabama; and this being true, she was obviously basing her conclusion on insufficient bases, because, if she did not know where the deceased was, she could not examine the proper court records for the only

information on which she could base the statement that the deceased had not obtained a divorce. *Brown* v. *Parks,* supra; *Brown* v. *Hogan,* supra; *McDonald* v. *McDonald,* 180 *Ga.* 771 (2) (180 S. E. 815).

■ In view of the ruling in division 4, the charge of the court, to the effect that proof of the issuance of a marriage license was necessary to the proof of a ceremonial marriage, was not harmful to the trustee because he was relying on the proof of a former marriage undissolved. The plaintiff contended that the trustee's evidence of the first marriage was insufficient because it was a common-law marriage and the competency of the parties was not proved, and further that, even if a marriage was proved, there was no evidence that it had not been dissolved by divorce. Assuming that the trustee proved a former valid marriage, his evidence was insufficient to show that it had not been dissolved by divorce. The charge complained of does not require the grant of a new trial.

■ Ground 8 of the amended motion for a new trial is that the court erred in charging the jury as follows: "The plaintiff alleges that the engineer of said train failed and neglected to blow the whistle upon approaching said crossing. . . Now, gentlemen, if the plaintiff should show to you by the evidence, that is, by a preponderance of the evidence, that the defendant was negligent in any one or more of the particulars of negligence set out in the plaintiff's petition, and that such negligence was the proximate cause of the death of deceased, Charles C. Cox, and if plaintiff otherwise makes out her case as alleged, and is otherwise entitled to recover under the charge of the court, then plaintiff could recover, and you would return a verdict awarding such damages in this case as you would assess under the rules regulating damages which will be given to you further along in this charge. . . Now, gentlemen, if you would believe from the evidence in this case that the defendant, in some one or more of the particulars of negligence alleged in the petition, was guilty of negligence which proximately caused the death of deceased, and if you should further believe from the evidence that the plaintiff is not barred of recovery by some other rule of law given you in charge, then you would be authorized to find for the plaintiff such damages as you think under the proof and rules of law given you in charge by the court, the plaintiff would be entitled to recover." The errors assigned on this

charge are as follows: "Movant contends that said charge was prejudicial error because it instructed the jury that they were authorized to find for the plaintiff in the event that they found that the defendant failed and neglected to blow the whistle upon approaching the crossing where the homicide occurred. Movant contends that the uncontradicted evidence showed that the crossing where the accident occurred was within the corporate limits of the City of Morrow, as laid out in an act of the General Assembly of Georgia, approved March 2, 1943 (Ga. L. 1943, p. 1453); and movant contends that the defendant railroad was expressly relieved by Code, § 94-507, from the duty to blow the whistle of its locomotives in approaching said crossing in said corporate limits, provided that the engineer of the locomotive signaled the approach of the train to such crossing in said corporate limits by constantly tolling the bell of the locomotive. Movant alleges that said charge imposed a greater burden on the defendant, at a private crossing in the corporate limits of the said city, than the law imposes at a public crossing similarly located, and gave the plaintiff the benefit of a theory of recovery to which she was not entitled under the law and evidence." This assignment of error is without merit, for the reason that the assignment of error does not fully state the charge of the court. The court charged the jury in these exact words: "The plaintiff alleges that the engineer of said train failed and neglected to blow his whistle upon approaching said crossing, *or to ring the bell on the engine, or to give any warning of the approach thereof in any manner whatsoever.*" The record prevails when there is a conflict between it and the bill of exceptions. The charge as given did not authorize the jury to find that a failure to blow the whistle alone would constitute an act of negligence upon proof of which the plaintiff could recover.

■ It was not error, under the pleadings and evidence, to fail to charge the law as to the duty of railroads to give warning upon the approach of their trains to public crossings within the corporate limits of cities, towns, and villages, by the tolling of a bell on the locomotive in lieu of blowing the whistle, as there was no evidence that the crossing at which the accident occurred was a public one.

■ The assignments of error in grounds 11 and 12 of the amended motion are as follows: "Because, as movant contends, the court erred in failing to charge the jury as follows: 'It rarely,

if ever, happens that a man labors every day until his death, or receives all [sic, on?] the whole a fixed and regular income for his labor; nor does his capacity to earn money often remain undiminished to old age. In arriving at the amount to be allowed as damages in any particular case, these things should be carefully borne in mind. Feebleness of health, actual sickness, the loss of employment, voluntarily abstaining from work, dullness in business, reduction in wages, the increasing infirmities of age, with a corresponding diminution of earning capacity, and other causes, may contribute, in a greater or less degree, to decreasing the gross earnings of a lifetime. In estimating damages, a proper allowance and deduction should be made in favor of the defendant for any diminution in income from labor which would have resulted from any of these sources. The defendant is not responsible for the consequences of the acts of others not its agents, nor for results which would in any event, and without reference to the conduct or negligence of the defendant, come to pass.' Movant contends that said instruction was upon a material issue, and was demanded by the pleadings and evidence, and was not substantially covered by other portions of the charge given; and that the failure to give it was prejudicial error. Because, as movant contends, the court erred in charging the jury as follows: 'In arriving at the gross sum the deceased would have earned to the end of his life had he not been killed, the jury should consider the age of the deceased at the time of his death, his health, possibility of sickness, occupation, habits, and surroundings, the amount of money he was earning, his expectation of life, the probable loss of employment, voluntary abstinence from work, dullness in business, reduction of wages, increasing infirmities of age, with a probable corresponding diminution of earning capacity, and any other causes which may contribute to the illustration of the gross earnings of a lifetime.' Movant contends that said instruction was incomplete, and failed to cover the substantial issues involved, in that the court failed to instruct the jury that it rarely, if ever, happens that a man labors every day until his death, or receives all the while a fixed and regular income for his labor; nor does his capacity to earn money often remain undiminished to old age; and in arriving at the amount to be allowed as damages in any particular case, these things should be carefully borne in mind." These assignments of error are without merit.

The original judgment of reversal is on rehearing vacated; the original opinion is withdrawn, and the foregoing substituted. The court did not err in overruling the trustee's motion for a new trial.

*Judgment affirmed. Sutton, P. J., and Parker, J., concur.*

## ON MOTION FOR REHEARING.

FELTON, J. The movant, M. P. Callaway, trustee, contends that a different rule applies to private crossings kept up by a railroad company, because the lookout and warning law applies only to public crossings. We are aware of two distinctions: (1) the violation of a duty required at a public crossing is negligence per se; and (2) a traveler over a private crossing is bound to exercise more care than at a public crossing, but except in plain and palpable cases the questions of negligence of the parties and proximate cause are still questions for the jury. The movant apparently contends that there can be no recovery for injury at a private crossing where the injured person did not stop, look, and listen. The case of *Comer* v. *Shaw,* supra, is strongly relied on. This decision has never been followed by the Supreme Court as to such an intimation, nor by this court. Whether or not we have successfully distinguished the *Comer* case, it apparently has been classified with *Harris* v. *Southern Ry. Co.,* 129 *Ga.* 388 (58 S. E. 873), *Thomas* v. *Central of Georgia Ry. Co.,* 121 *Ga.* 38 (48 S. E. 683), and *Atlanta Ry. &c. Co.* v. *Owens,* 119 *Ga.* 833 (47 S. E. 213); which class of cases is clearly inapplicable to the facts of this case. Shortly after the decision in *Comer* v. *Shaw,* that of *Georgia Railroad &c. Co.* v. *Cromer,* 106 *Ga.* 296 (31 S. E. 759), was rendered. We know of no better way in which to answer the movant's contention than to quote from that opinion: "The collision not having occurred at a public-road crossing, the defendant was under no statutory duty to give a signal or check the train in approaching thereto. Civil Code, § 2222; *Comer* v. *Shaw,* 98 *Ga.* 543 [25 S. E. 733]. Within the limits of incorporated cities and towns, and outside of such limits wherever a line of a railroad crosses a road which has been established pursuant to law, a railroad company, in the operation of its trains, is bound to give such signals and perform such acts as are required by statute in the latter case, and those which may be required by such reasonable regulations as the municipal authorities may prescribe in the former. A failure in either case to comply with the requirements of the law applicable would amount to neg-

ligence in law. In the case of *Comer* v. *Shaw,* cited supra, Chief Justice Simmons uses this language: 'Where a railroad crossing is in a populous locality and is much used by the public, even though the provisions of [Civil Code, § 2222] are not applicable, greater care is required of railroad companies with respect to speed and signals than is to be expected at places where the railroad is crossed by unfrequented country roads not established by law as public roads; but non-compliance at such a place with the statutory requirements applicable to public roads established by law is not, as a matter of law, negligence per se. It is generally for the jury to say whether under such circumstances the railroad company was negligent or not. This distinction is also to be taken into consideration when we come to consider the conduct of persons attempting to cross the railroad at such places. Where the crossing is one to which the statutory requirements above referred to are applicable, a person about to cross has a right to expect that the railroad company, in the running of its trains, will comply with these requirements; and reliance upon the discharge of its duties in the premises may in some degree excuse a want of full diligence on his part in looking out for the approach of a train. Where, however, the statute is not applicable, a person about to cross must assume a greater burden of care than he would be required to assume if the crossing were one to which the statute applied.' In the case of Thomas *v.* Railroad Co., 19 Blatch. 533, Wallace, J., says: 'Railroad corporations may ordinarily maintain such rate of speed with their trains as they see fit. They may even permit their officers to enjoy the luxury of special trains and dash over their roads with a single car almost noiselessly and at lightning speed. They may use their side-tracks near the intersection of highways or private roads for the storing of empty cars. While these things may not be agreeable to the general public, they are, nevertheless, within the privileges with which railroad corporations have been invested; and the public have no right to complain, because they are legitimately within these privileges. But when these privileges come in collision with the rights of those who use the highways or private roads to cross the railroad, they must give way, because, as to these persons, the railroad corporation is under the obligation of exercising reasonable care to prevent injury. What is reasonable care, or conversely, what omission of precaution is

negligence, can only be defined by general propositions, the application of which must depend upon the circumstances of the particular case.' Applying these principles to the case under consideration, it was for the jury to determine whether, under all the circumstances, it was the duty of the railroad company to give a signal of the train approaching this crossing, and to slacken the speed of the same; and if in this respect there was a failure of duty on the defendant's part, then whether the deceased, by the exercise of ordinary care, could have avoided the consequences of its negligence in not giving the signal and reducing the speed of the train."

The movant also contends that, since the contrary does not appear, it should be presumed that the common law obtains in Alabama, and that under the common law no jurisdiction of a non-resident of Alabama could be acquired by substituted service by publication. Ordinarily this contention would be sound, but the presumption of the validity of the last ceremonial marriage is one of the strongest presumptions known to the law, and the presumption that the common law obtains in Alabama yields to it as does every other conflicting presumption. In the circumstances, it will be presumed that Alabama has made constitutional statutory provision for substituted service, under which it is not absolutely essential to the validity of a judgment that a non-resident defendant have actual notice of the pendency of the proceeding. The same would apply to any other State. The evidence does not show that the deceased did not reside in any other State but Georgia and Alabama. *Axtell* v. *Axtell*, 181 *Ga.* 24 (181 S. E. 295) ; *Stiles* v. *Stiles*, 183 *Ga.* 199 (187 S. E. 870). A statute providing for service by publication is valid, if it provides "a reasonable method of imparting notice." Arndt v. Griggs, 134 U. S. 316 (10 Sup. Ct. 557, 33 L. ed. 918) ; Jacob v. Roberts, 223 U. S. 261 (32 Sup. Ct. 303, 56 L. ed. 429). It could have been possible, and reasonably so, that the deceased could have sued his first wife for a divorce in Alabama or elsewhere, and that she did not receive the notice required to be sent to her if her address was known, or that her address was unknown. The argument that a man could desert his wife, move away and live in several States, and return to his wife's home town and marry again and occupy a position which it would be very difficult to attack by showing that he had not obtained a divorce, is untenable because the presumption of the validity of the

last marriage does not apply in a criminal case. 7 Am. Jur. 770, § 40. "In a prosecution for bigamy, the State makes out a prima facie case when it proves that the man accused married two different women at different times, and that when he married the second time he knew that his first wife was alive." *Reikes* v. *State*, 71 *Ga. App.* 324 (30 S. E. 2d, 806).

In *Christopher* v. *Christopher*, 198 *Ga.* 361 (31 S. E. 2d, 818), it was simply held that the full faith and credit clause did not apply to the decree of a foreign country. *Joyner* v. *Joyner*, 131 *Ga.* 217, 223 (62 S. E. 182, 18 L. R. A. (N. S.) 647, 127 Am. St. R. 220) followed the case of *Haddock* v. *Haddock*, 201 U. S. 562 (26 Sup. Ct. 525, 50 L. ed. 867, 5 Ann. Cas. 1), which was overruled in *Williams* v. *North Carolina*, 317 U. S. 287 (63 Sup. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273).

*Rehearing denied. Sutton, P. J., and Parker, J., concur.*